HUDSON HOUSE CONDOMINIUM ASSOCIATION, INC. *v.*
MICHAEL B. BROOKS ET AL.
(14345)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and BORDEN, Js.

Argued June 3—decision released August 12, 1992

*Lee A. Samowitz,* for the appellant (plaintiff).

*Patrick W. Frazier,* with whom, on the brief, was *Fernando F. deArango,* for the appellee (defendant Connecticut Housing Finance Authority).

COVELLO, J. This is an action to foreclose a statutory lien for delinquent common expense assessments due a condominium association pursuant to General Statutes § 47-258 of the Common Interest Ownership Act. General Statutes §§ 47-200 through 47-281. The issues on appeal are whether the trial court improperly: (1) limited the amount of the common expense assessments entitled to priority to only those assessments that had accrued during the six month period immediately preceding the commencement of the foreclosure action; and (2) excluded attorney's fees and other litigation costs from the sums authorized a priority pursuant to § 47-258 (b).[1] We conclude that the

---

[1] General Statutes (Rev. to 1989) § 47-258 provides in part: "(a) The association has a statutory lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes delinquent. Unless the declaration otherwise provides, fees, charges, late charges, fines and interest charged pursuant to subdivisions (10), (11) and (12) of subsection (a) of section 47-244 are enforceable as assessments under this section. If an assessment is payable in instalments, the full amount of the assessment is a lien from the time the first instalment thereof becomes due.

"(b) A lien under this section is prior to all other liens and encumbrances on a unit except (1) liens and encumbrances recorded before the recordation of the declaration and, in a cooperative, liens and encumbrances which the association creates, assumes or takes subject to, (2) a first or second security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent, or, in a cooperative, a first or second security interest encumbering only the unit owner's interest and perfected before the date on which the assessment sought to be enforced became delinquent, and (3) liens for real property taxes and other governmental assessments or charges against the unit or cooperative. The lien is also prior to all security interests described in subdivision (2) of this subsection to the extent of the common expense assessments based on the periodic budget adopted by the association pursuant to subsection (a) of section

common expense assessments entitled to a priority were those assessments that accrued during the six months immediately preceding the commencement of the foreclosure action, and that attorney's fees and costs are entitled to be included in the priority debt. We, therefore, reverse in part the judgment of the trial court.[2]

On January 8, 1991, the plaintiff, Hudson House Condominium Association, Inc. (HHCA), began an action to foreclose a statutory lien for delinquent common expense assessments due on a condominium unit owned by the named defendant, Michael B. Brooks, in the city of Bridgeport. The complaint also named the Connecticut Housing Finance Authority (CHFA) as an additional defendant by reason of its interest as the assignee

47-257 which would have become due in the absence of acceleration during the six months immediately preceding institution of an action to enforce either the association's lien or a security interest described in subdivision (2) of this subsection. This subsection does not affect the priority of mechanics' or materialmen's liens, or the priority of liens for other assessments made by the association."

[2] The plaintiff, Hudson House Condominium Association, Inc. (HHCA), has also raised two additional issues concerning its nonpriority debt that is subsequent in interest to the mortgage of the defendant Connecticut Housing Finance Authority (CHFA). These issues do not present actual controversies, however, because the value of the condominium is far lower than the amount of CHFA's mortgage and there is, therefore, no equity to secure the lower priority lien. CHFA claimed a balance due on its mortgage in excess of $82,000, but the trial court found the value of the property to be only $47,000. " 'In the absence of an actual and existing controversy for us to adjudicate in any sense of the term, the courts of this state may not be used as a vehicle to obtain judicial opinions upon points of law; *Reply of the Judges,* 33 Conn. 586 [1867]; and where the question presented is purely academic, we must refuse to entertain the appeal. *Young* v. *Tynan,* 148 Conn. 456, 459, 172 A.2d 190 [1961].' *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* 177 Conn. 17, 19, 411 A.2d 1 (1979)." *Shays* v. *Local Grievance Committee,* 197 Conn. 566, 571-72, 499 A.2d 1158 (1985).

of a first mortgage on the unit that was subsequent in right to HHCA's lien.

HHCA calculated its delinquent debt for common expense assessments at $95 per month as follows: (1) $855 for the nine months from April through December, 1990, that being the charge for the period immediately preceding the institution of the foreclosure proceedings; (2) $285 for the three months from January through March, 1991, those being the charges that had accrued during the pendency of the action; and (3) $855 for the nine months from April through December, 1991, that being the amount of common expense assessments that HHCA claimed it was entitled to accelerate. In addition, HHCA claimed interest and the costs of collection, including attorney's fees.

The trial court agreed with HHCA's calculation of the amounts due but concluded that only six months of common expense assessments, i.e., $570, together with interest, were entitled to the statutory priority over CHFA's first mortgage. The trial court refused to include HHCA's attorney's fees and costs in the amount entitled to priority.[3] The trial court thereafter rendered a judgment of strict foreclosure finding the debt and assigning law days to the end that CHFA was required to pay HHCA $570 plus interest in order to redeem the premises on its assigned law day. HHCA appealed to the Appellate Court and we thereafter transferred the matter to this court pursuant to Practice Book § 4023.

I

HHCA first claims that the trial court improperly limited the amount of HHCA's priority debt to the com-

---

[3] The trial court awarded attorney's fees of $1500, appraisal fees of $450, and a title examination fee of $150, together with taxable costs.

mon expense assessments that accrued in the six months immediately preceding the commencement of the foreclosure. HHCA argues that it was also entitled to a priority for the common expense assessments that accrued during the pendency of the action. We do not agree.

Liens for delinquent common expense assessments on individual units within an association are creatures of statute. Section 47-258 (a) provides: "The association has a statutory lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes delinquent." Further, § 47-258 (j) provides that "[t]he association's lien may be foreclosed in like manner as a mortgage on real property."

In addition to creating the lien and authorizing its foreclosure, § 47-258, contrary to the tenet that the priority of liens is governed by the common law rule that first in time is first in right; *State* v. *Bucchieri,* 176 Conn. 339, 346, 407 A.2d 990 (1978); carves out an exception and grants a priority to the lien for common expense assessments. The priority, however, is temporally limited by § 47-258 (b) to the amount "of the common expense assessments . . . *which would have become due* in the absence of acceleration *during the six months immediately preceding institution of an action to enforce . . . the association's lien . . . .*" (Emphasis added.)

Despite this unequivocal language, HHCA argues that because it could, in theory, initiate a foreclosure on delinquent common expense assessments every six months, it could thereby obtain a priority status for all delinquent assessments. HHCA contends that, instead of engaging in this cumbersome and wasteful procedure, § 47-258 (b) should be interpreted to give priority status to all common expense assessments accruing during the pendency of a given action.

In support of its claim, HHCA relies upon the portion of § 47-258 (b) that states: "The lien is also prior to all security interests described in subdivision (2) of this subsection to the extent of the common expense *assessments* . . . which would have become due in the absence of acceleration during the six months immediately preceding institution of an action to enforce either [HHCA's] lien or a security interest described in subdivision (2) of this subsection." (Emphasis added.) HHCA claims that because the statute uses the word "assessment*s*" and not "assessment," the legislature intended to give priority to more than six months of common expense assessments. We disagree.

General Statutes § 1-1 (f) provides that "[w]ords importing the singular number may extend and be applied to several persons or things, and *words importing the plural number may include the singular.*" (Emphasis added.) Thus, the fact that the language of this statute uses the plural "assessments," as opposed to "assessment," need not have special legal significance. We conclude that the use of the plural in this particular context indicates nothing more than a recognition that common expenses normally accrue and are charged on a monthly basis, and that a given six month period will, therefore, contain six assessments.

HHCA further argues that CHFA will be unjustly enriched if we interpret § 47-258 to limit the priority lien to six months of common expense assessments. In construing a statute, "we follow the 'golden rule of statutory interpretation' . . . that the legislature is presumed to have intended a reasonable, *just* and constitutional result." (Emphasis added.) *Sanzone* v. *Board of Police Commissioners,* 219 Conn. 179, 187, 592 A.2d 912 (1991). When the statute is clear, however, the appropriate rule is that one cannot be *unjustly* enriched by a statutory enactment. 66 Am. Jur. 2d 946, Resti-

tution and Implied Contracts § 3. While the plaintiff may disagree with the equities of limiting the § 47-258 (b) priority to six months of common expense assessments, this is a matter not for the judiciary, but rather for the legislature that enacted the statute. We conclude that the trial court correctly determined that HHCA's priority debt was limited to the common expense assessments that accrued in the six months immediately preceding the commencement of the foreclosure.

## II

HHCA next claims that § 47-258 authorizes, as part of HHCA's priority lien, the litigation expenses incident to its foreclosure. Specifically, HHCA seeks the inclusion of the attorney's fees, the appraiser's fees, the title examination fees and other costs of collection. It claims that the trial court improperly failed to include these fees in the priority debt. We agree.

Section 47-258 (g) provides that a "judgment or decree in any action brought under this section shall include costs and reasonable attorney's fees for the prevailing party." It is undisputed that HHCA, as the plaintiff and the party in whose favor the trial court rendered judgment, is the prevailing party in this, its own foreclosure action. CHFA does not dispute that § 47-258 (g) authorizes the inclusion of these costs and fees as part of HHCA's judgment, but it maintains that because § 47-258 (b) does not specifically include the words "costs and attorney's fees" as part of the language creating its priority lien, those expenses are properly includable only as part of the nonpriority lien that is subordinate to CHFA's interest.

In construing a statute, we assume that "the legislature intended to accomplish a reasonable and rational result." *Stoni* v. *Wasicki,* 179 Conn. 372, 376–77, 426 A.2d 774 (1979). Section 47-258 (a) creates a statutory

lien for delinquent common expense assessments. Section 47-258 (j) authorizes the foreclosure of the lien thus created. Section 47-258 (b) provides for a limited priority over other secured interests for a portion of the assessment accruing during the six month period preceding the institution of the action. Section 47-258 (g) specifically authorizes the inclusion of the costs of collection as part of the lien. Since the amount of monthly assessments are, in most instances, small, and since the statute limits the priority status to only a six month period, and since in most instances, it is going to be only the priority debt that in fact is collectible, it seems highly unlikely that the legislature would have authorized such foreclosure proceedings without including the costs of collection in the sum entitled to a priority. To conclude that the legislature intended otherwise would have that body fashioning a bow without a string or arrows. We conclude that § 47-258 authorizes the inclusion of attorney's fees and costs in the sums entitled to a priority.[4]

The judgment is reversed in part and the case is remanded with direction to include the attorney's fees and the other costs of collection in the priority debt.

In this opinion the other justices concurred.

---

[4] No. 91-359 of the Public Acts of 1991 (Public Act 91-359), which repealed and replaced General Statutes § 47-258 (b) and which took effect on July 5, 1991, after the judgment of strict foreclosure in this case, clarified that attorney's fees and costs are included in the priority debt. Public Act 91-359 provides that the "lien is also prior to all security interests described in subdivision (2) of this subsection to the extent of (A) an amount equal to the common expense assessments . . . which would have become due in the absence of acceleration during the six months immediately preceding institution of an action to enforce either the association's lien or a security interest described in subdivision (2) of this subsection and (B) *the association's costs and attorney's fees in enforcing its lien.*" (Emphasis added.)