NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

12-P-1761                                         Appeals Court


   DRUMMER BOY HOMES ASSOCIATION, INC.  vs.  CAROLYN P. BRITTON &
                         another.[1]


                     No. 12-P-1761.

        Middlesex.     March 3, 2014. - November 7, 2014.

             Present:  Trainor, Brown, & Meade, JJ.


Condominiums, Common expenses.  Real Property, Condominium.
     Lien.  Mortgage, Priority.



     Civil actions commenced in the Concord Division of the
District Court Department on August 6, 2007; February 6, 2008;
and October 6, 2008.

     After consolidation, the case was heard by Peter J.
Kilmartin, J., on a motion for summary judgment, and a motion to
alter and amend the judgment was also heard by him.


     Thomas O. Moriarty (Katherine G. Brady with him) for the
plaintiff.
     Randy A. Britton, pro se.
     Henry A. Goodman, Ellen A. Shapiro, Merle R. Hass, Charles
A. Perkins, Jr., & Gary M. Daddario, for Community Associations
Institute, amicus curiae, submitted a brief.
     Stephen C. Reilly & Jennifer E. Greaney, for Bank of
America, N.A., amicus curiae, submitted a brief.


_____

     [1] Randy A. Britton.

BROWN, J.  The plaintiff, Drummer Boy Homes Association, Inc. (Association), appeals from a decision and order of the Appellate Division of the District Court in the Association's consolidated actions against the owners of a condominium unit to recover unpaid common expenses.  The Appellate Division ruled that, pursuant to G. L. c. 183A, § 6, the Association's statutory lien for those expenses was prior to the first mortgage on the defendants' unit only to the extent of amounts due for the six months preceding the institution of the first of the Association's three consolidated lawsuits, and not for the three successive six-month periods preceding each suit.  The defendants, Carolyn P. Britton and Randy Britton, appearing pro se, cross-appeal, claiming the judgment is void due to misnomer of the plaintiff.[2]  We affirm.

1.  Background.  We summarize the undisputed facts and procedural history from the Appellate Division's July 9, 2010, opinion, supplemented from the record.  The Association provides for the common operation of a condominium complex in Lexington known as Drummer Boy Green.  The defendants, owners of a unit in the complex, withheld payment of their monthly fees for common expenses in connection with a dispute with the Association over

---

[2] We acknowledge the amicus brief submitted by Community Associations Institute in support of the plaintiff, and the amicus brief submitted by Bank of America, N.A., in support of the decision of the Appellate Division.

certain parking rules and associated fines. Pertinent here, the Association filed an action in the District Court on July 31, 2007, to recover the unpaid common expenses and to establish a priority lien, as provided in c. 183A, § 6, that would be superior to the first mortgage to the extent of the common expense assessments due during the six months preceding the suit.[3] When the defendants continued to withhold the monthly fees, the Association filed two more actions in succession, and the three actions were consolidated.[4]

On the Association's motion for summary judgment, a judge of the District Court ruled that, in accordance with the statute, the Association's lien for the defendants' common expense assessments had priority over the first mortgage, but only to the extent of the six-month period preceding commencement of the first of the consolidated actions. The Association appealed to the Appellate Division, maintaining that it was entitled to priority liens for three successive six-month periods, for each action filed, but the Appellate Division affirmed the judgment in all respects. In response to the

---

[3] Two earlier actions filed by the Association against the Brittons to recover unpaid common expenses were voluntarily dismissed when the Brittons paid the amounts due.

[4] Coldwell Banker Mortgage and Massachusetts Educational Financing Authority, lienholders on the unit, were named as parties in the complaint. Both appeared and filed answers, but did not participate further in the proceedings and did not appeal.

Brittons' appeal concerning the misnomer, the Appellate Division rejected their argument that the judgment was void thereby, and corrected the mistake by substituting the Drummer Boy Homes Association, Inc.[5]  The Association appealed to this court and the Brittons cross-appealed.

2.  <u>Discussion</u>.  Chapter 183A, § 6(<u>a</u>)(i), as amended by St. 1992, c. 400, § 7, provides, in relevant part, that "[t]he organization of unit owners shall have a lien on a unit for any common expense assessment levied against that unit from the time the assessment becomes due."  In § 6(<u>c</u>), second par., as amended through St. 1992, c. 400, § 9, the statute further provides, in relevant part, as follows:

> "Such lien is prior to all other liens and encumbrances on a unit except (i) liens and encumbrances recorded before the recordation of the master deed, (ii) a first mortgage on the unit recorded before the date on which the assessment sought to be enforced became delinquent, and (iii) liens for real estate taxes and other municipal assessments or charges against the unit.  This lien is also prior to the mortgages described in clause (ii) above to the extent of the common expense assessments based on the budget adopted pursuant to subsection (<u>a</u>) above which would have become due in the absence of acceleration during the six months immediately preceding institution of an action to enforce the lien and to the extent of any costs and reasonable attorneys' fees incurred in the action to enforce the lien . . . ."

---

[5] The Association originally filed suit as the "Board of Directors of the Drummer Boy Homes Association, Inc."  The Appellate Division determined that the Brittons suffered no prejudice as a result of the correction.

According to its plain language, the statute affords the Association a lien for common expenses, as they become due, that is deemed prior to all other liens, except those listed in § 6(c), second par., (i) through (iii).  In addition, upon instituting an enforcement action, the Association obtained a lien that is deemed superior to the first mortgage on the defendants' unit for amounts due for the six months preceding the Association's July 31, 2007, complaint, plus costs and reasonable attorney's fees incurred in the action.  Hence, the Association's lien for overdue assessments that fall outside the six-month period preceding the lawsuit are not superior to the first mortgage, and do not enjoy a so-called "super-priority" status.  See, e.g., Trustees of Macintosh Condominium Assn. v. Federal Deposit Ins. Corp., 908 F. Supp. 58, 62-63 (D. Mass. 1995) (distinguishing between an association's super-priority lien for the six months preceding an action, which is superior to a first mortgage, and the priority of the lien for any remaining unpaid assessments, pursuant to c. 183A, § 6).

We reject the Association's argument that, by filing successive lawsuits, the statute permits it to establish multiple priority liens, ahead of the first mortgage, for additional six-month periods of unpaid assessments.  As the Appellate Division correctly observed, the six-month priority lien set forth in c. 183A, § 6(c), second par., is consistent

with the six-month priority period set forth in the Uniform Condominium Act, § 3-116 (1980),[6] which was intended as an "equitable balance between the need to enforce collection of unpaid assessments and the obvious necessity for protecting the priority of the security interests of mortgage lenders." Uniform Condominium Act, § 3-116 comment 2. To that end, under the Uniform Condominium Act, "[w]hile the vast majority of the condominium's equity would be left for the mortgagee, six months' worth of assessments were given to the condominium association as a priority lien." Goldmintz, Lien Priorities: The Defects of Limiting the "Super Priority" for Common Interest Communities, 33 Cardozo L. Rev. 267, 273 (2011-2012). We similarly construe c. 183A, § 6(c), as intended to effect a balance between the interests of condominium associations and those of lenders that rely on the common-law rule of first-in-time priority in extending mortgages to unit owners. See generally Commonwealth v. Jean-Pierre, 65 Mass. App. Ct. 162,

_____

[6] Section 3-116(b) of the Uniform Condominium Act (1980) provides, in relevant part:

"The lien is also prior to the mortgages and deeds of trust described in clause (ii) above [i.e., a first mortgage or deed of trust on the unit recorded before the date on which the assessment sought to be enforced became delinquent] to the extent of the common expense assessments based on the periodic budget adopted by the association pursuant to Section 3-115(a) which would have become due in the absence of acceleration during the 6 months immediately preceding institution of an action to enforce the lien."

163 (2005) (guidance in statutory interpretation may be found in legislative history, construction of related statutes, and the law of other jurisdictions).

The Association argues that there is nothing explicit in the statute that curtails its ability to file successive lawsuits in order to secure multiple six-month priority liens ahead of the first mortgage. Were that the case, the language of § 6(c), limiting the portion of an association's lien that is ahead of the first mortgage to six months' worth of assessments, would seem a cumbersome and, ultimately, superfluous mechanism if successive lawsuits could be utilized to secure the entirety of the unit owner's delinquency. See, e.g., Commonwealth v. Woods Hole, Martha's Vineyard & Nantucket S.S. Authy., 352 Mass. 617, 618 (1967) (statutory interpretation should leave no portion of the statute superfluous). See also Commonwealth v. Jean-Pierre, supra at 164, quoting from Commonwealth v. Burke, 392 Mass. 688, 690 (1984) ("[A] statute should not be interpreted as being at odds with the common law 'unless the intent to alter it is clearly expressed'").

Nor does it appear that the six-month priority period was selected by the Legislature at random. Similar statutes providing condominium associations with a six-month priority lien for unpaid assessments ahead of the first mortgage were enacted in numerous States in response to the increase in

foreclosures that endangered the financial stability of condominium associations and unduly burdened other unit owners. See Boyack, Community Collateral Damage:  A Question of Priorities, 43 Loy. U. Chi. L.J. 53, 58-61 (2011-2012).  Because a delinquency in common expenses often arose alongside a delinquency in mortgage payments, the six-month priority lien was crafted to address the problem at a time when lender foreclosures typically took six months to complete.  Goldmintz, Lien Priorities:  The Defects of Limiting the "Super Priority" for Common Interest Communities, 33 Cardozo L. Rev. at 281 & n.91.[7]  The legislation did not foresee that in today's climate of extensive and long-delayed foreclosure, six months would generally be inadequate.  See id. at 269.  Nevertheless, legislative efforts to increase the super-priority status of

---

[7] Condominium associations "often must compete with lenders for limited funds in what is today a ubiquitous series of events:  a typical unit owner in a [common interest community, or CIC], like many homeowners across the country, owns a mortgage on the unit held by a lender.  When a unit owner enters difficult financial straits, he or she often simultaneously defaults on both monthly maintenance payments and monthly mortgage payments.  In order to recoup their respective losses, both the lender and the CIC attach an encumbrance to the property, known as a lien.  Each lienholder then competes in a foreclosure sale to collect often-substantial debts from the limited and insufficient value of the unit."  (Footnotes omitted.)  Goldmintz, Lien Priorities:  The Defects of Limiting the "Super Priority" for Common Interest Communities, 33 Cardozo L. Rev. at 268.

condominium association liens beyond the six-month period preceding suit have met with little success.  Id. at 288.[8]

While we are aware of no Massachusetts cases on point, the Supreme Court of Connecticut, in Hudson House Condominium Assn., Inc. v. Brooks, 223 Conn. 610 (1992), rejected a similar argument made by a condominium association under Connecticut's priority lien statute, which, like that in Massachusetts, provides a condominium association a priority lien ahead of the first mortgage for six months' worth of assessments preceding suit.  The association in that case sought priority status, ahead of the first mortgage, for all common expenses accruing during the pendency of the action, "because it could, in theory, initiate a foreclosure on delinquent common expense assessments every six months."  Id. at 614.  Based on what the court characterized as the "unequivocal language" of the statute, and the policy issue at stake, the court determined that an extension of the association's priority lien would more appropriately come from the Legislature.  Id. at 616.

To support its multiple lien argument, the Association also puts much emphasis on the fact that the phrase "priority liens,"

---

[8] In addition, Federally insured mortgages have typically required that a first mortgage be subject to a priority lien of no greater than six months for assessments, posing an obstacle to legislative efforts to increase the priority amount of assessments.  See Boyack, Community Collateral Damage:  A Question of Priorities, 43 Loy. U. Chi. L.J. at 63-64.

in the plural, is utilized throughout c. 183A, § 6(c), fourth par.  That paragraph sets forth a procedure available to a first mortgagee to avoid establishment of a condominium association's six-month priority lien by entering into a written agreement with the association before a complaint is filed.  The Association insists that the use of "priority liens" in that paragraph reflects legislative intent to permit successive lawsuits to establish multiple six-month priority liens, ahead of the first mortgage, under c. 183A, § 6(c), second par.

We note, however, that § 6(c) utilizes only the singular "lien" when referring specifically to an association's six-month priority lien for unpaid common expense assessments.[9]  This is consistent with § 6(a), which distinguishes between the priority lien arising from the assessment of common expenses, in § 6(a)(i), and the priority lien arising from expenses the association incurs in attempting to collect delinquent assessments or redress other problems with the unit owner, in

---

[9] For example, c. 183A, § 6(c), fifth par, which expands on the procedure set out in the fourth paragraph, provides, in relevant part, that "[t]he failure of the organization of unit owners to send the written statement to the first mortgagee, as described above, shall not affect the priority lien of the organization of unit owners for up to six months' common expenses, but the priority amount shall not include any costs or attorneys' fees incurred to collect or enforce the liens." G. L. c. 183A, § 6(c), inserted by St. 1998, c. 242, § 6.

§ 6(a)(ii).[10]  Both are treated as priority liens for common

expense assessments, in that they enjoy priority to the extent

delineated in § 6(c), second par., and may be enforced

accordingly.  But the procedure set forth in the fourth and

fifth paragraphs of § 6(c) affords the first mortgagee a means

to avoid an enforcement action, and thus the six-month priority

lien on the unit, by agreeing to pay the unit owner's

delinquency, certain future common expenses and assessments, and

the association's collection costs.  We decline to infer

legislative intent to permit multiple six-month priority liens

ahead of the first mortgage through the institution of

---

[10] Section 6(a)(ii) provides, in relevant part:

"If any expense is incurred by the organization of unit
owners as a result of the unit owner's failure to abide by
the requirements of this chapter or the requirements of the
master deed, trust, by-laws, restrictions, rules or
regulations, or by the misconduct of any unit owner, or his
family members, tenants, or invitees, the organization of
unit owners may assess that expense exclusively against the
unit owner and such assessment is shall constitute a lien
against that unit from the time the assessment is due, and
such assessment shall be enforceable as a common expense
assessment under this chapter."

Section 6(a)(ii) further provides:

"The organization of unit owners may also assess any fees,
attorneys' fees, charges, late charges, fines, costs of
collection and enforcement, court costs, and interest
charged pursuant to this chapter against the unit owner and
such assessment shall constitute a lien against the unit
from the time the assessment is due, and shall be
enforceable as common expense assessments under this
chapter."

successive lawsuits merely from the use of the plural "priority liens" in a section of the statute addressing the settlement of an association's various expenses.[11]

Based on the foregoing, we conclude that it is for the Legislature, and not for this court, to decide whether to expand the priority status for common expense assessments beyond a single six-month period preceding the filing of an action. We do not construe c. 183A, § 6, in its current form, to afford the Association in this case a priority lien, ahead of the first mortgage, in an amount equal to eighteen months of assessments through the filing of three successive lawsuits.

The Brittons preserved only one issue for cross-appeal, that is, whether the judgment is a nullity due the misnomer of the plaintiff. The Brittons do not persuade us that the Appellate Division erred in correcting the mistake rather than

---

[11] We are also mindful that, in construing a statute, undue significance should not attach to the use of the singular versus the plural, without a clear indication of legislative intent. See G. L. c. 4, § 6 ("[w]ords importing the singular number may extend and be applied to several persons or things, words importing the plural number may include the singular"). Had the Legislature intended multiple six-month priority liens, "it could have said so readily," rather than utilizing the plural of liens elsewhere in the statute. Commonwealth v. Tsouprakakis, 267 Mass. 496, 500 (1929). See Hudson House Condominium Assn., Inc. v. Brooks, 223 Conn. at 615 (statutory use of "assessments," in the plural, did not indicate legislative intent to permit multiple priority liens beyond the six-month limit set out in the statute).

voiding the judgment.  We therefore affirm the decision and order of the Appellate Division.

So ordered.