******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# AKINTAYO AKINYELE *v.* HUNTINGTON CONDOMINIUM ASSOCIATION, INC., ET AL.
## (AC 47624)

Moll, Clark and Wilson, Js.

*Syllabus*

The plaintiff, who owned a condominium unit at the defendant condominium complex, appealed from the trial court's judgment dismissing, on the basis of res judicata, his claims against the defendant. He claimed that the court improperly determined that his claims were barred by res judicata because he did not have the opportunity to fully litigate those claims sounding in, inter alia, breach of contract, in a prior, related foreclosure action. *Held*:

The trial court improperly concluded that the plaintiff's claims were barred by res judicata, as, applying the rationale of *Coach Run Condominium, Inc.* v. *Furniss* (136 Conn. App. 698), this court concluded that the plaintiff was unable, as a matter of law, to bring his claims against the defendant in the prior foreclosure action and, thus, he did not have an opportunity to litigate fully those claims; accordingly, this court reversed the trial court's judgment of dismissal.

Argued September 25, 2025—officially released May 5, 2026

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the defendant McCarthy Associates, LLC, et al. were defaulted for failure to appear; thereafter, the plaintiff withdrew the complaint as to the defendant County Management Services, LLC; subsequently, the court, *Hon. William Holden*, judge trial referee, dismissed the plaintiff's claims against the defendant McCarthy Associates, LLC, et al. and granted the named defendant's motion to dismiss, from which the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*Donald M. Brown*, for the appellant (plaintiff).

*David Corbett*, for the appellee (named defendant).

*Opinion*

MOLL, J.  The plaintiff, Akintayo Akinyele, appeals from the judgment of the trial court dismissing, on the basis of res judicata, his claims against the defendant Huntington Condominium Association, Inc., also known as Huntington Condominium Association-Bridgeport, Inc.[1]  On appeal, the plaintiff claims that the court improperly determined that his claims were barred by res judicata because, the plaintiff argues, he did not have the opportunity to fully litigate his claims in a prior, related foreclosure action.  We agree and, accordingly, reverse the judgment of the trial court.

The following facts, which are undisputed, and procedural history are relevant to our resolution of this appeal.  At all relevant times, the plaintiff owned a condominium unit at the defendant's condominium complex in Bridgeport (condominium unit).  On May 19, 2018, the defendant commenced a separate action against the plaintiff to foreclose its statutory lien on the condominium unit for unpaid monthly common charges, late fees, attorney's fees, and costs in accordance with General Statutes § 47-258 (foreclosure action).[2]  See *Huntington*

---

[1] The plaintiff originally filed the present action against three other defendants: Jerry McCarthy, also known as John Doe (McCarthy); McCarthy Associates, LLC, doing business as McCarthy Associates (McCarthy Associates); and County Management Services, LLC.  On February 25, 2021, McCarthy and McCarthy Associates were defaulted for failure to appear; however, on July 24, 2024, the trial court, *Hon. William Holden*, judge trial referee, dismissed the plaintiff's claims against these nonappearing defendants on the basis of his failure to comply with a prior court order requiring him to move for judgment on his claims against them or to request a hearing in damages.  The plaintiff has not appealed from the judgment of dismissal as to McCarthy and McCarthy Associates.  Additionally, on December 5, 2022, after his claims against County Management Services, LLC, had been stricken, the plaintiff withdrew those claims.  Accordingly, we refer in this opinion to Huntington Condominium Association, Inc., also known as Huntington Condominium Association-Bridgeport, Inc., as the defendant.

[2] General Statutes § 47-258 provides in relevant part: "(a) The association has a statutory lien on a unit for any assessment attributable to that unit or fines imposed against its unit owner.  Unless the declaration otherwise provides, reasonable attorneys' fees and costs, other fees, charges, late charges, fines and interest charged pursuant to subdivisions (10), (11) and (12) of subsection (a) of section 47-244 and any

*Condominium Assn., Inc.* v. *Akinyele*, Superior Court, judicial district of Fairfield, Docket No. CV-18-6075505-S.[3] On July 31, 2018, the plaintiff filed an answer and asserted a special defense alleging payment of the disputed amounts. On July 23, 2020, the defendant filed (1) a reply denying the plaintiff's special defense and (2) a certificate of closed pleadings. On August 24, 2020,

---

other sums due to the association under the declaration, this chapter, or as a result of an administrative, arbitration, mediation or judicial decision, are enforceable in the same manner as unpaid assessments under this section. If an assessment is payable in installments, the full amount of the assessment is a lien from the time the first installment thereof becomes due.

"(b) . . . [A] lien under this section is prior to all other liens and encumbrances on a unit except (1) liens and encumbrances recorded before the recordation of the declaration and, in a cooperative, liens and encumbrances which the association creates, assumes or takes subject to, (2) a first or second security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent, or, in a cooperative, a first or second security interest encumbering only the unit owner's interest and perfected before the date on which the assessment sought to be enforced became delinquent, and (3) liens for real property taxes and other governmental assessments or charges against the unit or cooperative. In all actions brought to foreclose a lien under this section or a security interest described in subdivision (2) of this subsection, the lien is also prior to all security interests described in subdivision (2) of this subsection to the extent of (A) an amount equal to the common expense assessments based on the periodic budget adopted by the association pursuant to subsection (a) of section 47-257 which would have become due in the absence of acceleration during the nine months immediately preceding institution of an action to enforce either the association's lien or a security interest described in subdivision (2) of this subsection, excluding any late fees, interest or fines which may be assessed by the association during the nine-month period, and (B) the association's costs and reasonable attorney's fees in enforcing its lien. A lien for any assessment or fine specified in subsection (a) of this section shall have the priority provided for in this subsection in an amount not to exceed the amount specified in subparagraph (A) of this subsection. This subsection does not affect the priority of mechanics' or materialmen's liens or the priority of liens for other assessments made by the association. . . .

"(j) The association's lien may be foreclosed in like manner as a mortgage on real property. . . ."

Section 47-258 was amended on October 1, 2023; see Public Acts 2023, No. 23-119, § 1; however, that amendment is not relevant to this appeal. Accordingly, unless otherwise noted, we refer to the current revision of the statute.

[3] The defendant also named JPMorgan Chase Bank, N.A., a junior lienholder, as a defendant in the prior foreclosure action.

the plaintiff filed a motion for leave to amend his special defense and to file a counterclaim, which the trial court, *Spader, J.*, denied without comment on October 19, 2020. On November 4, 2020, the plaintiff filed a second motion for leave to amend his special defense and to file a counterclaim.[4] On November 23, 2020, the court denied the plaintiff's second motion for leave, seemingly on timeliness grounds, reasoning that, "[u]nder the current circumstances . . . the court does not see a need to allow amended pleadings herein after pleadings have been closed."

On December 4, 2020, the plaintiff commenced the present action. In his eleven count revised complaint filed on March 26, 2021, the plaintiff asserted three claims against the defendant that are relevant to this appeal: (1) breach of contract (count one); (2) breach of the implied duty of good faith and fair dealing (count five); and (3) negligence (count eleven).[5] In support thereof, the plaintiff alleged, respectively, that (1) the defendant committed a breach of contract by failing to provide "notices and hearings" to the plaintiff, as well as by not accepting payment from the plaintiff, (2) the defendant breached the implied duty of good faith and fair dealing by, in bad faith, failing to send a timely notice of default, not accepting the plaintiff's payments, and "creating a dispute in order to bill attorney's fees and [to] take the plaintiff's property by foreclosure," and

[4] On November 17, 2020, the plaintiff filed a revised second motion for leave to amend his special defense and to file a counterclaim, to which he attached a proposed pleading setting forth (1) a second special defense asserting unclean hands and (2) a five count counterclaim sounding in (a) breach of contract, (b) breach of the implied duty of good faith and fair dealing, (c) a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., (d) breach of fiduciary duty, and (e) negligence.

[5] In this revised complaint, the plaintiff directed two additional counts to the defendant, which sounded in (1) breach of fiduciary duty (count four) and (2) a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. (count six). On October 31, 2022, the court, *Moses, J.*, granted a motion filed by the defendant and County Management Services, LLC, to strike several counts from the revised complaint, including the two aforementioned counts. Thereafter, the plaintiff did not plead over; rather, on December 5, 2022, the plaintiff withdrew the counts that had been stricken from the revised complaint.

(3) the defendant was negligent by breaching its duty to the plaintiff by continuing "to send the plaintiff to collection" and failing "to investigate the issues with the plaintiff's payments."[6] With respect to these counts, the plaintiff's prayer for relief requested "money damage" and "punitive damage."

Meanwhile, on December 9, 2020, in the foreclosure action, the plaintiff filed a motion to consolidate that action and the present action.[7] The court denied that motion on January 11, 2021, reasoning that "[t]here are different parties in the two actions and contractual claims beyond the basic claim in [the foreclosure action]."[8] Further, on February 15, 2023, in the foreclosure action, the court, *Hon. William Holden*, judge trial referee, granted an oral motion made by the defendant to default the plaintiff for failure to appear at trial. On July 5, 2023, the court rendered a judgment of foreclosure by sale, as later amended on July 11, 2023, determining, inter alia, that the condominium unit's fair market value was $145,000 and that the outstanding debt, including attorney's fees, totaled $63,389.40. The plaintiff filed an appeal in the foreclosure action on August 1, 2023, but he withdrew that appeal on October 31, 2023, following a satisfaction of the foreclosure judgment.[9]

On November 7, 2023, in the present action, the defendant filed a motion titled "motion to dismiss and/or motion for summary judgment," with an accompanying supporting memorandum of law, in which it claimed

[6] On December 2, 2022, the defendant filed an answer, denying the material allegations of the plaintiff's revised complaint and asserting special defenses alleging (1) failure to mitigate damages vis-à-vis all remaining counts against it and (2) comparative negligence as to count eleven. On December 7, 2022, the plaintiff filed a reply denying the defendant's special defenses.

[7] The plaintiff argued that the two actions should be consolidated because "there is complete unity in the fact patterns" and the actions were both filed in the same judicial district.

[8] In the present action, the plaintiff also filed a motion to consolidate the two actions, which the court denied.

[9] On September 25, 2023, in the foreclosure action, the defendant filed a satisfaction of judgment representing that JPMorgan Chase Bank, N.A., a junior lienholder, had paid the debt.

that (1) the present action should be dismissed as moot in light of the satisfaction of the foreclosure judgment, or (2) alternatively, it was entitled to summary judgment because the plaintiff's claims were barred by res judicata.[10]  On November 30, 2023, the plaintiff filed an objection to the defendant's "motion to dismiss and/ or motion for summary judgment," and, on December 7, 2023, the defendant filed a reply memorandum.  On December 13, 2023, during a status/discovery conference held on the record, the court heard argument on the defendant's "motion to dismiss and/or motion for summary judgment."

On January 31, 2024, the court granted the defendant's "motion to dismiss and/or motion for summary judgment," reasoning that "the plaintiff's claim in this matter is barred based on the doctrine of res judicata. The argument presented by the plaintiff has previously been argued in other cases in this courthouse.  The court has found the argument by the plaintiff unpersuasive to allow the plaintiff to be compensated as mentioned within [his revised] complaint.  The plaintiff's damages stem from missed payments by the plaintiff to the defendant that required additional compensation to account for fees incurred in bringing [the foreclosure action].  Therefore, the court hereby grants the defendant's motion to dismiss."  This appeal followed.  Additional facts and procedural history will be set forth as necessary.

The plaintiff claims that the court erred in granting the defendant's "motion to dismiss and/or motion for summary judgment" on the basis of res judicata because he

[10] Additionally, on November 7, 2023, the defendant filed (1) a motion for leave to amend its special defenses in order to add a third special defense alleging that the present action was barred by the doctrines of res judicata and collateral estoppel, with a proposed amended pleading filed separately, and (2) a motion for permission to file a motion for summary judgment, as the case had already been assigned for trial.  See Practice Book § 17-44 ("[i]f no scheduling order exists but the case has been assigned for trial, a party must move for permission of the judicial authority to file a motion for summary judgment").  The court did not adjudicate these motions, and we do not deem it necessary to discuss further the lack of rulings thereon.  See footnote 15 of this opinion.

was precluded from bringing his claims in the foreclosure action and was instead required to bring such claims in the present action. The defendant argues in response that the plaintiff was able to bring his claims against it in the foreclosure action because he could have raised them as defenses to the foreclosure and that, therefore, the res judicata doctrine precludes the plaintiff's claims against it in the present action. We agree with the plaintiff.[11]

We begin our analysis by setting forth the applicable standard of review and the well settled principles of res judicata. "The issue of whether the [doctrine] of res judicata . . . [applies] to the facts of this case presents a question of law. Our review, therefore, is plenary." (Internal quotation marks omitted.) *Speer* v. *Brown Jacobson P.C.*, 222 Conn. App. 638, 648, 306 A.3d 1105 (2023).

"[T]he doctrine of res judicata, or claim preclusion, [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. . . . The doctrine of res judicata applies if the following elements are satisfied: the identity of the parties to the actions are the same; the same claim, demand or cause of action is at issue; the judgment in the first action was rendered on the merits; and the parties had an opportunity to litigate the issues fully." (Internal quotation marks omitted.) *Wells Fargo Bank, National Assn.* v. *Doreus*, 218 Conn. App. 77, 83–84, 290 A.3d 921, cert. denied, 347 Conn. 904, 297 A.3d 198 (2023). "[A] judgment on the merits is one which is based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction or form. . . . A decision with respect to the rights and liabilities of the parties is on the merits where it is based on the ultimate fact or state

---

[11] The plaintiff also asserts in passing that the mootness doctrine does not apply to the present case. Insofar as the plaintiff properly has raised such a claim, it need not be addressed in this opinion, as the court did not grant the defendant's "motion to dismiss and/or motion for summary judgment" on mootness grounds, and the defendant does not claim, as an alternative ground for affirmance, that the plaintiff's claims are moot.

of facts disclosed by the pleadings or evidence, or both, and on which the right of recovery depends." (Internal quotation marks omitted.) *Speer* v. *Brown Jacobson P.C.*, supra, 222 Conn. App. 649.

"Res judicata, as a judicial doctrine . . . should be applied as necessary to promote its underlying purposes. . . . But by the same token, the internal needs of the judicial system do not outweigh its essential function in providing litigants a legal forum to redress their grievances. . . . The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest. The doctrines of preclusion, however, should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies. . . .

"We review the doctrine of res judicata to emphasize that its purposes must inform the decision to foreclose future litigation. The conservation of judicial resources is of paramount importance as our trial dockets are deluged with new cases daily. We further emphasize that where a party has fully and fairly litigated his claims, he may be barred from future actions on matters not raised in the prior proceeding. But the scope of matters precluded necessarily depends on what has occurred in the former adjudication." (Internal quotation marks omitted.) Id., 649–50.

We next review foreclosure procedures under the Common Interest Ownership Act (act), General Statutes § 47-200 et seq., which provide context for the foreclosure action. "The [act] is a comprehensive legislative scheme regulating all forms of common interest ownership that is largely modeled on the Uniform Common Interest Ownership Act. Public Acts 1983, No. 83-474.

A 'common interest community' is defined chiefly by the fact that each unit owner is obligated to pay certain charges, such as taxes and insurance premiums, attributable to common property held jointly by the owners through their association." *Nicotra Wieler Investment Management, Inc.* v. *Grower*, 207 Conn. 441, 447, 541 A.2d 1226 (1988). "Section 47-258 addresses common interest community liens and their enforcement. An association has a statutory lien on a unit for common charges and other assessments attributable to the unit imposed against its unit owner." *Neighborhood Assn., Inc.* v. *Limberger*, 321 Conn. 29, 36, 136 A.3d 581 (2016). "[Section 47-258] establishes the priority of liens with respect to foreclosures involving condominiums [and cooperatives]. As our Supreme Court noted in *Hudson House Condominium Assn., Inc.* v. *Brooks*, 223 Conn. 610, 614, 611 A.2d 862 (1992), [l]iens for delinquent common expense assessments on individual units within an association are creatures of statute and the governing statute, § 47-258 (b), sets forth the priority of these liens with respect to other liens. Our Supreme Court also recognized that this legislative scheme departs from the common law rule of first in time equals first in right. Id. Section 47-258 (b) establishes a specific priority scheme and delineates which liens may take priority over assessment liens and the extent to which assessment liens may take priority over even those priority liens. This court must respect the intricate priority scheme that the legislature has established." (Internal quotation marks omitted.) *Stonybrook Gardens Cooperative, Inc.* v. *Newrez, LLC*, 225 Conn. App. 1, 11–12, 315 A.3d 337 (2024). "Section 47-258 (b) . . . establishes a super priority lien, as against a first or second security interest, for those assessments that accrued during the [nine] months immediately preceding the commencement of the foreclosure action . . . ." (Internal quotation marks omitted.) Id., 12–13. Further, General Statutes § 47-257 (g) provides that "[n]o unit owner may exempt himself from liability for payment of the common expenses by waiver of the use or enjoyment of any of the common

elements or by abandonment of the unit against which the assessments are made."[12]

This court previously has held that special defenses and counterclaims cannot be maintained by condominium unit owners in actions against them by condominium associations to foreclose statutory liens on the basis of failure to pay common charges; instead, such claims must be brought in separate actions. In *Coach Run Condominium, Inc.* v. *Furniss*, 136 Conn. App. 698, 47 A.3d 413 (2012) (*Coach Run*), a condominium association (association) commenced an action against a condominium unit owner (owner) seeking to foreclose its statutory lien on the owner's condominium unit. Id., 700. The owner filed special defenses alleging that the condominium unit was unsalable as a result of the association's failure to make repairs to the exterior walls and common areas. Id. The trial court struck the owner's special defenses and rendered summary judgment as to liability in favor of the association; id., 701–702; reasoning that, "other than by contesting nonpayment, a condominium unit owner has no defense in an action to foreclose a condominium common charge lien." Id., 701. The court rendered a judgment of foreclosure by sale, from which the owner appealed. Id.

On appeal, this court rejected the owner's claim that the act did not preclude defenses to common charge lien foreclosures. Id., 703. This court observed that "[a]lmost all of the judges of the Superior Court who have addressed this issue have held that special defenses and counterclaims will not lie in an action brought by a condominium association to foreclose a lien based upon a unit owner's failure to pay common charges. See *Congress Street Condominium Assn., Inc.* v. *Anderson*, 132 Conn. App. 536, 541–43 and 542 n.9, 33 A.3d 274 (2011) (citing cases)." *Coach Run Condominium, Inc.* v. *Furniss*, supra, 136 Conn. App. 705. This court agreed with the

[12] Since the events underlying this appeal, the legislature has amended § 47-257 (g) in ways that have no bearing on the merits of the present case. See Public Acts 2025, No. 25-73, § 9. In the interest of simplicity, we refer to the current revision of the statute.

trial court's analysis, stating: "Ruling in accord with this majority, the trial court in the present case held that §§ 47-257 and 47-258 manifest the legislature's intention that a duly constituted condominium association has an enforceable lien to assist its collection of common charges. The [trial] court reasoned that the legislature provided condominium associations with the ability to impose such a lien in order to protect the condominium's common financial interest in timely collection of anticipated revenues for the benefit of the community as a whole. That protection would be jeopardized if any condominium unit owner could withhold payment pending the resolution of individual complaints or disagreements regarding the nature and extent of services rendered by the condominium." Id. This court further stated in a footnote that, "[a]s the [trial] court noted, its ruling did not leave the [owner] without a remedy because any condominium unit owner may file an independent action to recover damages for negligence or other misconduct on the part of the . . . association." Id., 705 n.7.

Applying the rationale of *Coach Run* to the present action, we conclude that the plaintiff was unable, as a matter of law, to bring his claims for breach of contract, breach of the implied duty of good faith and fair dealing, and negligence against the defendant in the foreclosure action.[13] Instead, the plaintiff was required to file a sepa-

---

[13] In a footnote in *Coach Run*, this court stated that the parties had "not distinguished between the component parts of the [unit owner's] indebtedness to the [association], but have treated the [owner's] indebtedness as falling within the general rubric of common expenses. Accordingly, we shall do likewise. But see *Congress Street Condominium Assn., Inc.* v. *Anderson*, [supra, 132 Conn. App. 541–44] (holding that pleading of special defenses and counterclaims, while precluded in actions to foreclose statutory liens based on nonpayment of common charges, is permissible in actions to foreclose statutory liens based on nonpayment of fines)." *Coach Run Condominium, Inc.* v. *Furniss*, supra, 136 Conn. App. 701 n.4; see also *Congress Street Condominium Assn., Inc.* v. *Anderson*, supra, 544 (concluding that, "due to the inherent differences in the application and function of fines and common charges, they should not be treated interchangeably in a foreclosure action"). Similarly, in the present action, the defendant has not meaningfully distinguished between the component parts of the debt sought in the foreclosure action.

rate action to seek adjudication of such claims. Thus, the plaintiff did not have an opportunity to litigate fully his present claims against the defendant in the foreclosure action, and, therefore, the court improperly concluded that the plaintiff's claims were barred by res judicata.[14]

In sum, we conclude that the court improperly granted the defendant's "motion to dismiss and/or motion for summary judgment" and dismissed the plaintiff's claims against the defendant on the basis of res judicata.[15]

---

[14] We observe that the arguments raised by the defendant sound more closely in collateral estoppel principles than the doctrine of res judicata. See *Torrington Tax Collector, LLC* v. *Riley*, 354 Conn. 66, 89 n.20, 349 A.3d 551 (2026) ("[a]lthough the doctrines of collateral estoppel and res judicata share a conceptual closeness . . . the two doctrines are regarded as distinct" (internal quotation marks omitted)). The defendant essentially argues that, in the prior action when the court rendered judgment of foreclosure, the court fully and fairly litigated issues relating to the common charges, and that those issues were actually decided and necessary to the judgment. Because collateral estoppel was not raised in the defendant's motion for summary judgment and therefore not adjudicated by the court, we do not address it further, other than to emphasize that our holding in this decision is limited to the narrow question of whether the plaintiff's claims are barred on the ground of res judicata.

[15] The plaintiff also claims that a motion to dismiss is an improper vehicle for the disposition of a res judicata issue, and, therefore, the court improperly rendered a judgment of dismissal on the basis of res judicata. Because we conclude on the merits that the court improperly determined that the plaintiff's claims against the defendant were barred by res judicata, we need not address any purported procedural deficiency in the manner in which the defendant raised the res judicata issue before the court. See *Speer* v. *Brown Jacobson P.C.*, supra, 222 Conn. App. 647 n.10 (in appeal from judgment of dismissal rendered on basis of res judicata, this court declined to address whether motion to dismiss was correct procedural vehicle to raise res judicata and collateral estoppel claims in light of conclusion on merits that trial court's reliance on these doctrines was improper). We iterate, however, that, "[u]nlike claims implicating subject matter jurisdiction, which may be raised at any time; see, e.g., *Bank of New York Mellon* v. *Tope*, 345 Conn. 662, 677 n.6, 286 A.3d 891 (2022); a claim that an action or claim is barred by res judicata or collateral estoppel must be raised in the trial court through appropriate pleadings. See, e.g., *Labbe* v. *Pension Commission*, 229 Conn. 801, 816, 643 A.2d 1268 (1994) ('[r]es judicata does not provide the basis for a judgment of dismissal; it is a special defense that is considered after any jurisdictional thresholds are passed'); see also Practice Book § 10-50 (res judicata is special defense that 'must be specially pleaded')." *M&T Bank* v. *Lewis*, 349 Conn. 9, 19 n.6, 312 A.3d 1040 (2024). Thereafter, res judicata may properly be raised by

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

---

way of a motion for summary judgment. See *Speer* v. *Brown Jacobson P.C.*, supra, 647 n.10.