DIME SAVINGS BANK OF NEW YORK, FSB *v.* CLARE MURANELLI ET AL.
(14269)

Schaller, Spear and Hennessy, Js.

---

Argued September 18—decision released November 28, 1995

*Charles Basil*, with whom, on the brief, was *Adam L. Bendett*, for the appellant (substitute plaintiff).

*William W. Ward*, with whom, on the brief, was *Steven Stanford Berizzi*, for the appellee (defendant Laurelton House Condominium Association, Inc.).

HENNESSY, J. The dispositive issue in this appeal is whether a trial court may order a party foreclosing a mortgage on a condominium unit to make payments in lieu of common charges during the pendency of the foreclosure action. We hold that such an order is inconsistent with General Statutes § 47-258[1] and, therefore, reverse the order of the trial court.

---

[1] General Statutes § 47-258 provides in pertinent part: "(a) The association has a statutory lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes delinquent. Unless the declaration otherwise provides, fees, charges, late charges, fines and interest charged pursuant to subdivisions (10), (11) and (12) of subsection (a) of section 47-244 are enforceable as assessments under this section. If an assessment is payable in instalments, the full amount of the assessment is a lien from the time the first instalment thereof becomes due.

This appeal arises from Dime Savings Bank's foreclosure of a mortgage on a condominium unit. Dime Savings Bank commenced the action in 1992, but later moved to substitute FGB Realty Advisors (FGB) as the plaintiff because FGB had purchased the subject note and mortgage. The defendants in the action are Clare Muranelli and Stanley P. Thal, the joint owners of the condominium unit, and the condominium association, Laurelton House Condominium Association, Inc. (association). During the pendency of the action the trial court granted the association's motion, dated September 20, 1994, which requested that FGB make monthly payments in lieu of common charges to the association during the pendency of the foreclosure action. The trial court found no statutory prohibition to such an order and relied on its equitable powers as authority to order the payments. FGB appeals from that order.[2]

"(b) A lien under this section is prior to all other liens and encumbrances on a unit except (1) liens and encumbrances recorded before the recordation of the declaration and, in a cooperative, liens and encumbrances which the association creates, assumes or takes subject to, (2) a first or second security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent, or, in a cooperative, a first or second security interest encumbering only the unit owner's interest and perfected before the date on which the assessment sought to be enforced became delinquent, and (3) liens for real property taxes and other governmental assessments or charges against the unit or cooperative. The lien is also prior to all security interests described in subdivision (2) of this subsection to the extent of (A) an amount equal to the common expense assessments based on the periodic budget adopted by the association pursuant to subsection (a) of section 47-257 which would have become due in the absence of acceleration during the six months immediately preceding institution of an action to enforce either the association's lien or a security interest described in subdivision (2) of this subsection and (B) the association's costs and attorney's fees in enforcing its lien. A lien for any assessment or fine specified in subsection (a) of this section shall have the priority provided for in this subsection in an amount not to exceed the amount specified in subparagraph (A) of this subsection. This subsection does not affect the priority of mechanics' or materialmen's liens, or the priority of liens for other assessments made by the association. . . ."

[2] The association earlier moved to dismiss this appeal for lack of a final judgment. This court denied the motion.

The association asserts that General Statutes § 47-207[3] allows a trial court to exercise its equitable powers to an extent not inconsistent with the Common Interest Ownership Act (act), General Statutes §§ 47-200 through 47-281. The association argues that the trial court's order in this case does not contravene § 47-258 of the act or the act in general. We disagree.

General Statutes § 47-258 establishes the priority of liens with respect to foreclosures involving condominiums. As our Supreme Court noted in *Hudson House Condominium Assn., Inc.* v. *Brooks*, 223 Conn. 610, 614, 611 A.2d 862 (1992), "[l]iens for delinquent common expense assessments on individual units within an association are creatures of statute" and the governing statute, § 47-258 (b), sets forth the priority of these liens with respect to other liens. Our Supreme Court also recognized that this legislative scheme departs from the common law rule of first in time equals first in right. Id. Section 47-258 (b) establishes a specific priority scheme and delineates which liens may take priority over assessment liens and the extent to which assessment liens may take priority over even those priority liens. This court must respect the intricate priority scheme that the legislature has established.

Section 47-258 (b) first pronounces that "[a] lien under this section is prior to all other liens and encumbrances on a unit except (1) liens and encumbrances recorded before the recordation of the declaration . . . (2) a first or second security interest on the unit recorded before the date on which the assessment

---

[3] General Statutes § 47-207 provides: "The principles of law and equity, including the law of corporations and unincorporated associations, the law of real property, and the law relative to capacity to contract, principal and agent, eminent domain, estoppel, fraud, misrepresentation, duress, coercion, mistake, receivership, substantial performance, or other validating or invalidating cause supplement the provisions of this chapter, except to the extent inconsistent with this chapter."

sought to be enforced became delinquent . . . and (3) liens for real property taxes and other governmental assessments or charges against the unit . . . ." Section 47-258 (b) further establishes a super priority lien, as against a first or second security interest, for those assessments that "accrued during the six months immediately preceding the commencement of the foreclosure action . . . ." *Hudson House Condominium Assn., Inc.* v. *Brooks*, supra, 223 Conn. 611–12. The intricacies of the scheme are evident. The statute specifies which liens shall have priority and makes all others, including, for example, judgment liens, inferior. This scheme establishes the order in which the lienholders shall be paid from the available equity in the subject real property.

As applied to this case, the scheme, pursuant to § 47-258, is as follows: (1) super priority lien for the six months of assessments; (2) the FGB mortgage, if it is a first or second security interest; (3) the remainder of the unpaid condominium assessments, including those assessments that accrue during the pendency of the action; and (4) other liens, if any. The statute clearly provides a place in the priority scheme for common charges that accrue during the pendency of an action. The trial court's order disturbs this scheme by subordinating the priority of FGB's first or second security interest to the association's liens for those assessments not within the super priority lien.

The order of the court requires that FGB pay the association in lieu of common charges. These payments would then become additional debt that FGB would seek to recover from the equity of the real estate through the foreclosure action. Thus, the total amount of liens asserted against the property will remain the same, except that the association's lien will have been satisfied by FGB. The effect of the court's order is to force the holder of a first or second security interest

to pay for a subordinate lien, which the holder must then pursue without the assurance of receiving full payment thereon. The legislature already considered the position of condominium associations with respect to other lienholders, and, had it wanted to enhance the association's priority further, it would have done so. The statute states that the association's interest, except for the super priority, shall be subordinate to the first and second security interest. The court's order rearranges the priority scheme established by the legislature and is, therefore, inconsistent with § 47-258 (b).

The association argues that the court's order is supported by the policy evidenced in General Statutes § 47-258 (k).[1] While § 47-258 (k) establishes a procedure in some cases for the payment of assessments that accrue during the pendency of an action, the procedure contemplates that the receiver will have funds to collect. If the legislature desired to provide for the payment of assessments during the pendency of an action even when funds are not available, it would have done so. When funds are not available, as in this case, an association must rely first on its super priority lien and next on its lien that must follow those liens specifically set forth in § 47-258 (b).

Finally, the association contends that because a lien for assessments not covered by the super priority lien often remains unpaid, the association will be burdened with that debt. It argues that because these expenditures are used for the common good of all units and

---

[1] General Statutes § 47-258 (k) provides: "In any action by the association to collect assessments or to foreclose a lien for unpaid assessments, the court may appoint a receiver of the unit owner pursuant to section 52-504 to collect all sums alleged to be due from that unit owner prior to or during the pendency of the action. The court may order the receiver to pay any sums held by the receiver to the association during the pendency of the action to the extent of the association's common expense assessments based on a periodic budget adopted by the association pursuant to subsection (a) of section 47-257."

the mortgagee often takes title to the unit as a result of the foreclosure action, the mortgagee realizes a gain at the expense of the association. While the association may disagree with the equities of the statutory scheme, this question is not a matter for the judiciary. *Hudson House Condominium Assn., Inc.* v. *Brooks*, supra, 223 Conn. 616. "When the statute is clear . . . the appropriate rule is that one cannot be *unjustly* enriched by a statutory enactment." (Emphasis in original.) Id., 615.

The order of the trial court is reversed and the case is remanded with direction to deny the motion for payments in lieu of common charges.

In this opinion the other judges concurred.