Filed 12/29/15  Palms & Sands Owners Assn. v. Bank of America CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| PALMS & SANDS OWNERS ASSOCIATION, INC.<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>BANK OF AMERICA, N.A. et al.,<br><br>    Defendants and Respondents. | D068681<br><br>(Super. Ct. No. RIC1207056)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on December 18, 2015, be modified as follows:

On page 1, the name of Sarah Burwick shall be added to the counsel listing appearing on behalf of defendants and respondents so the counsel listing shall read:

Bryan Cave, Sarah Burwick, Stuart W. Price, Andrea N. Winternitz and Sean David Muntz, for Defendants and Respondents.

There is no change in the judgment.

McCONNELL, P. J.

Copies to:  All parties

Filed 12/18/15  Palms & Sands Owners Assn. v. Bank of America CA4/1 (unmodified version)

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| PALMS & SANDS OWNERS ASSOCIATION, INC.<br><br>Plaintiff and Appellant,<br><br>v.<br><br>BANK OF AMERICA, N.A. et al.,<br><br>Defendants and Respondents. | D068681<br><br><br>(Super. Ct. No. RIC1207056) |


APPEAL from a judgment of the Superior Court of Riverside County, Thomas A. Peterson and David M. Chapman, Judges.  Affirmed.

Catanzarite Law Corporation, Kenneth J. Catanzarite, Nicole M. Catanzarite-Woodward, and Brandon E. Woodward, for Plaintiff and Appellant.

Bryan Cave, Stuart W. Price, Andrea N. Winternitz and Sean David Muntz, for Defendants and Respondents.


Bank of America, N.A. and ReconTrust Company (Recon) (together, Respondents) successfully demurred to the first amended complaint of the Palms &

Sands Owners Association, Inc. (the Association). On appeal, the Association contends the trial court erred by (1) sustaining the demurrer without leave to amend, (2) denying the Association's motion for leave to amend, (3) entering judgment in favor of Respondents while the motion for leave to amend was still pending, and (4) sustaining certain of Respondents' evidentiary objections. We reject these contentions and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Development and Association*

"Palms & Sands" is a common interest development in Rancho Mirage, California. Sixteen of its 71 fee simple parcels are improved with residential duplexes (Residential Units); one parcel is improved with access roads, lawn area, a pool and pool house, and a laundry facility, all of which are used and shared by the owners in common.

The Association manages Palms & Sands under a Declaration of Covenants, Conditions, Restrictions and Easements (the Declaration) that governs each property owner within the development. The Declaration defines "owner(s)" as "[t]he parties . . . holding a recorded fee simple interest in a Lot . . . . 'Owner' does not include any party having an interest in a Lot merely as security for the performance of an obligation."

The Association maintains the common area roads, parking lot, pool, yard, and buildings; pays property taxes on the common lots; provides trash pickup for the Residential Units; maintains insurance coverage for common area and Residential Unit building structures; and provides water service, general maintenance, and management services.

2

The Declaration authorizes the Association to require each owner to pay regular and special assessments "for improvement and maintenance of the Common Area(s), administration of the Property, and to promote the recreation, safety, and welfare for the common good of all the owners." Under this authority, the Association levied a regular monthly assessment to pay for the services described in the preceding paragraph. Under the Declaration, an owner's acceptance of a deed to a lot within the development constitutes the owner's agreement to pay the assessments, which are "the personal obligations of the owner . . . ."

If an owner fails to pay an assessment, the Declaration authorizes the Association to record a lien against that owner's lot. "In addition to all other legal rights and remedies," the Association may sue the owner to collect the unpaid assessments or foreclose on the lien.

*Unit 8*

In December 2002, Ron Bailey purchased Unit 8 at Palms & Sands. In February 2005, he borrowed $129,000 from Countrywide Home Loans, Inc. (Countrywide Loans). The loan was secured by a first deed of trust that named Recon as trustee. Countrywide Bank assigned its interests in the first deed of trust to CitiMortgage, Inc. (Citi) in 2005.

In July 2005, Bailey obtained a $51,000 home equity line of credit from Countrywide Bank, N.A. The line of credit was secured by a second deed of trust that also named Recon as Trustee. In 2013, Countrywide Bank assigned its interests in the second deed of trust to Bank of America.

3

As a result of these transactions, Citi holds the first deed of trust; Bank of America holds the second deed of trust; and Recon is trustee of both deeds of trust. Bank of America is the servicer of both loans.

At times not specified in any filed pleading, Bailey defaulted on his loans, stopped paying the Association's monthly assessments, and died. The Association initially opened an estate for Bailey, but his heirs had no interest in pursuing it because Unit 8 was then valued at less than $60,000 while its encumbrances exceeded $200,000.

*The Complaints*

In May 2012, the Association sued Bailey and other Residential Unit owners on a variety of legal theories to recover unpaid assessments. In December 2013, the Association amended its complaint to add Respondents as defendants on four causes of action: breach of oral and written contract, breach of implied contract, declaratory relief, and unjust enrichment. The Association alleged that notwithstanding Respondents' knowledge that Bailey (and his estate) had failed to pay Association assessments, Respondents "strategic[ally]" and "wrongful[ly]" delayed foreclosing on Unit 8 to allow market conditions to improve; in the meantime, Respondents enjoy the benefits the Association provides in maintaining and insuring Unit 8, yet avoid paying the monthly assessments Respondents would incur if they were to acquire title to Unit 8 by foreclosure.

Bank of America moved for judgment on the pleadings and Recon demurred. The trial court dismissed the Association's contract-based claims, but granted leave to amend as to the unjust enrichment and declaratory relief claims.

4

In April 2014, the Association filed a first amended complaint that, as relevant here, sought to recover Bailey's unpaid assessments on Unit 8 from Respondents under unjust enrichment and declaratory relief grounds.

Respondents demurred. While the demurrer was pending, the Association moved for leave to file a second amended complaint adding a cause of action against Respondents for violation of California's Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200).[1] The Association supported its motion with a declaration from the Association's proposed banking industry expert, who opined Respondents' strategic delay in foreclosing on Unit 8 constituted an unfair business practice.

*The Trial Court's Rulings*

At the hearing on Respondents' demurrer, the trial court announced its tentative decision to sustain the demurrer without leave to amend. The court reasoned that although Respondents were entitled to foreclose, they were not obligated to do so and, thus, had not been unjustly enriched. The Association's counsel requested the trial court immediately consider its motion for leave to amend, which was scheduled to be heard a few weeks later. The court responded it had read the expert's declaration and thought amending to allege a UCL violation "might be, perhaps, a good way for the [Association]

---

[1] The proposed second amended complaint alleged Bailey stopped paying assessments in February 2010 and died in March 2011. It further alleged the Unit 8 assessments were $14,000 in arrears as of April 2014. As discussed below, the second amended complaint was never filed.

5

to go," but the court was not in a position to accelerate the hearing on the motion for leave to amend.[2] The court adopted its tentative ruling as final on July 9, 2014.

On July 11, Respondents served a notice of ruling and attached a trial court order (1) sustaining the demurrer without leave to amend, (2) dismissing the claims against Respondents with prejudice, and (3) stating judgment shall be entered in Respondents' favor.

On July 15, the Association objected to the notice of ruling "in that it asserts [Respondents] were dismissed with prejudice" even though the Association's motion for leave to amend a new claim against them was still pending. On July 18, the Association filed a motion for reconsideration on the same basis. Respondents opposed the Association's various requests for relief and objected to the expert's declaration.

On July 28, the trial court entered a judgment dismissing Respondents with prejudice. The same day, the court continued the hearing on the Association's motion for leave to amend so it could be heard in conjunction with the motion for reconsideration.

On August 18, the trial court issued tentative rulings denying the Association's motions for leave to amend and for reconsideration. The trial court denied leave to amend on the basis the Association "cited no authority that a lender is required to

---

[2] The court's full explanation was as follows: "Well, I read the declaration of the banker expert, if you will. I'm not in a position to advance that motion to today and grant the motion to amend to allege that cause of action. I mean, I looked at it and I thought about it, and personally I thought it might be, perhaps, a good way for the plaintiff to go, but I wasn't sure. And I understand the plaintiff's position. They're sitting there, they're not getting their money, and they want it. And I—I just can't, in my own mind, come up with some legal theory as to how they are going to get it. [¶] . . . [¶] . . . You go ahead and come in here on July 28, and you can argue what you want to us at that time."

foreclose on a deed of trust when a borrower defaults. Foreclosure is just one of the avenues open to the lender in the event the borrower defaults on the underlying obligation. [¶] Objections to declaration of [the proposed banking expert] are sustained."

The trial court explained it was denying the motion for reconsideration because the court lacked jurisdiction by virtue of having already entered a judgment dismissing Respondents, but further explained it would have denied the motion in any event for the same reasons it denied the motion for leave to amend.

The Association did not request oral argument and the court adopted its tentative ruling as final on August 19, 2014.

## DISCUSSION

### I. *Demurrer*

The Association contends the trial court erred by sustaining Respondents' demurrer to the unjust enrichment claim. The Association does not challenge the ruling as to the declaratory relief claim.

#### A. *Standard of Review*

"In reviewing a judgment following the sustaining of a demurrer without leave to amend, we decide de novo whether the complaint states facts sufficient to state a cause of action." (*Bower v. AT&T Mobility, LLC* (2011) 196 Cal.App.4th 1545, 1552.) "We treat the demurrer as admitting all facts properly pleaded, but we do not assume the truth of contentions, deductions or conclusions of law." (*Ibid.*) We may also consider documents

7

attached to the complaint and matters subject to judicial notice.3  (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400.)  "A reviewing court will affirm a judgment based on the sustaining of a demurrer on any properly supported ground, regardless of the trial court's reason for its ruling."  (*Bower*, at p. 1552.)  " 'However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory.' "  (*Ibid*.)

B.    *Analysis*

Our court has repeatedly held " ' "[t]here is no cause of action in California for unjust enrichment." ' "  (*Levine v. Blue Shield of California* (2010) 189 Cal.App.4th 1117, 1138, quoting *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1370 (*Durell*); see *Melchior v. New Line Productions, Inc*. (2003) 106 Cal.App.4th 779, 793 [" 'The phrase "Unjust Enrichment" does not describe a theory of recovery, but an effect:  the result of a failure to make restitution under circumstances where it is equitable to do so.' "].)  Thus, the Association's allegation that Respondents have been unjustly enriched by their strategic delay in foreclosing on Unit 8 does not state a cause of action.  (*Levine*, at p. 1138.)  However, because "[u]njust enrichment is synonymous with restitution" (*Durell*, at p. 1370), on review of an order sustaining a demurrer we may assess whether the Association's allegations state a cause of action that may give rise to a right to restitution.  (See *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387-388 (*McBride*).)

---

3      We deny the Association's motion for judicial notice.  The documents attached as Exhibits A through C of the motion are already in the appellate record, and the document attached as Exhibit D postdates the judgment and is not necessary for our determination of the issues on appeal.

8

" 'Under the law of restitution, "[a]n individual is required to make restitution if he or she is unjustly enriched at the expense of another. [Citations.] A person is enriched if the person receives a benefit at another's expense. [Citation.]" [Citation.] However, "[t]he fact that one person benefits another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it." ' " (*Durell, supra*, 183 Cal.App.4th at p. 1370.) "There are several potential bases for a cause of action seeking restitution. For example, restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason. [Citations.] Alternatively, restitution may be awarded where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct. . . . [Citations.] In such cases, where appropriate, the law will imply a contract (or rather, a quasi-contract), without regard to the parties' intent, in order to avoid unjust enrichment." (*McBride, supra*, 123 Cal.App.4th at p. 388, fn. omitted.)

The Association has not alleged facts establishing it is entitled to restitution from Respondents. It has not alleged the existence of a contract between it and Respondents that was procured by fraud or was otherwise invalidated. (*McBride, supra*, 123 Cal.App.4th at p. 388.) Instead, the only contract the first amended complaint identifies is the Declaration, which expressly excludes lenders from the definition of owners responsible for paying assessments.

9

Nor has the Association identified fraudulent or other untoward conduct by Respondents that would render their refusal to foreclose or pay assessments unjust. Although the Association alleges it has incurred expenses in maintaining the development's common areas and in insuring the collateral for Respondents' loans (Unit 8), we are not persuaded it would be unjust for Respondents to retain those benefits.

The Association argues Respondents are unjustly enriched because their "benefit will never need to be repaid because when they finally decide market conditions are right, their foreclosure wipes out the unpaid [Association] fees so there is no reimbursement." This argument is unavailing for several reasons. First, the Association ignores the fact Bailey (and his estate) are primarily responsible for the assessments. Even if Respondents foreclose on Unit 8, Bailey's underlying contractual obligation to pay the assessments will survive foreclosure as the foreclosure only extinguishes junior liens, not the contractual obligations secured by them. (See *Diamond Heights Village Assn., Inc. v. Financial Freedom Senior Funding Corp.* (2011) 196 Cal.App.4th 290, 301 (*Diamond Heights*).)

Second, the Association is speculating regarding Respondents' motives and is assuming Respondents' eventual foreclosure and sale of Unit 8 would not yield sufficient proceeds to reimburse the Association for Bailey's unpaid assessments. Moreover, the Association cites no authority, and we are aware of none, that requires the holder of a deed of trust to foreclose at a particular time so that a homeowners association can replace a nonpaying owner with a paying one. To the contrary, lenders are generally entitled to foreclose if and when they choose. (See *Sierra-Bay Fed. Land Bank Assn. v.*

10

*Superior Court* (1991) 227 Cal.App.3d 318, 334-335 ["in this state a commercial lender is privileged to pursue its own economic interests and may properly assert its contractual rights"].)

Third, it is unclear that Respondents have received or ever will receive a benefit at the Association's expense. In light of the significant amount of debt encumbering Unit 8—$200,000 compared to its alleged value of $60,000—the only entity likely to benefit from the Association's efforts is the holder of the first deed of trust (nonparty Citi).

Finally, and most fundamentally, the Association's grievance is not so much with Respondents as it is with California's lien priority scheme. That is, although the Association is entitled to record a lien of its own against Unit 8 to secure Bailey's unpaid assessments, that lien would be junior to the first and second deeds of trust and would be extinguished in the event of a foreclosure on either senior lien. (Civ. Code, § 5675 [homeowners association assessments become lien on owner's separate interest when association records notice of delinquent assessment with county recorder]; *Diamond Heights, supra*, 196 Cal.App.4th at p. 301 [condominium assessment liens follow California's " 'first in time, first in right' " lien priority scheme]; *Dover Mobile Estates v. Fiber Form Prods., Inc*. (1990) 220 Cal.App.3d 1494, 1498 ["Liens which attach after execution of the foreclosed trust deed are extinguished. The purchaser at the trustee sale therefore takes title free of those junior or subordinate liens."].) The Association is not required to wait for senior lienholders to foreclose on their liens; it could foreclose on its own lien first. (See Civ. Code, § 5700; *Diamond Heights, supra*, 196 Cal.App.4th at pp.

11

301-302.) Yet the Association has not done so, presumably for the same type of strategic reasons for which it faults Respondents.

Moreover, although the parties have not cited any cases addressing homeowners association challenges to lien priority statutes, our independent research reveals that the courts that have considered such challenges—Connecticut and Florida state appellate courts—have rejected them. (See *Dime Sav. Bank, FSB v. Muranelli* (Conn.Ct.App. 1995) 667 A.2d 803, 806 [rejecting association's argument that "because [association] expenditures are used for the common good of all units and the mortgagee often takes title to the unit as a result of the foreclosure action, the mortgagee realizes a gain at the expense of the association"]; *U.S. Bank Nat'l Ass'n ex rel. Harborview 2005-10 Trust Fund v. Tadmore* (Fla.Ct.App. 2009) 23 So.3d 822, 823 (*Tadmore*) [reversing trial court's order requiring lender to pay association dues during foreclosure action where association challenged lender's alleged " 'undue delay in pursuing . . . foreclosure' "]; *U.S. Bank N.A. v. Farhood* (Fla.Ct.App. 2014) 153 So.3d 955, 959-960 [reversing trial court's order requiring lender to pay homeowners association dues as sanction for dilatory pursuit of foreclosure action].)[4]

---

[4]     The Association's reliance on *In re Spa at Sunset Isles Condo. Ass'n, Inc.* (Bankr. S.D. Fla. 2011) 454 B.R. 898, is misplaced. There, the bankruptcy court held federal bankruptcy law preempted Florida's statute relieving lenders of liability for homeowners association assessments prior to foreclosure. (*Id.* at pp. 905-906.) No bankruptcy preemption issues apply here. Moreover, the bankruptcy code at issue required only that the association's expenditures benefit the lender; there was no requirement, as there is under California law, that the lender's retention of the benefit be unjust. (*Id.* at p. 908.)

12

Our independent research also reveals that some state legislatures have addressed the Association's dilemma by adopting the Uniform Common Interest Ownership Act of 1982[5] (UCIOA) or similar statutory provisions that create a "superpriority lien" for homeowners association assessments, which allow a portion of the assessments to survive foreclosure of an otherwise senior lien. (See, e.g., *SFR Invs. Pool 1 v. U.S. Bank, N.A.* (Nev. 2014) 334 P.3d 408, 410-412.) However, California's Law Revision Commission recommended against adopting the UCIOA in 2003. (See Cal. Law Revision Com. (Nov. 21, 2003), Minutes, p. 8.)

Because California does not recognize a cause of action for unjust enrichment, and because the Association has not alleged facts entitling it to a restitution under some other cause of action, the trial court did not err by sustaining Respondents' demurrer.

## II. *Denying Leave to Amend to Allege a UCL Violation*

The Association contends the trial court erred by denying it leave to further amend its complaint to allege a violation of the UCL's "unfair" prong. Respondents counter that allowing the amendment would have been futile because the Association could not state a valid UCL claim. We agree.

### A. *Standard of Review*

" 'A general demurrer may be sustained without leave to amend where it is probable from the nature of the defects and previous unsuccessful attempts to plead that the plaintiff cannot state a cause of action.' [Citation.]" (*Oddone v. Superior Court*

---

[5] (Unif. Common Interest Ownership Act of 1982, § 3-116 (amended 2008), 7 pt. II, U.L.A. 374.)

(2009) 179 Cal.App.4th 813, 823.) Similarly, a trial court may deny a motion for leave to amend where the proposed amended claims lack merit. (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 652.) We review an order denying leave to amend in either circumstance for an abuse of discretion. (*Oddone*, at p. 823; *Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 230-231.)

### B. *The UCL's "Unfair" Prong*

California's UCL defines " 'unfair competition' as 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.' " (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370 (*Zhang*).) Because the statute " 'is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.' " (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 (*Cel-Tech*).)

"The standard for determining what business acts or practices are 'unfair' in consumer actions under the UCL is currently unsettled." (*Zhang, supra*, 57 Cal.4th at p. 380, fn. 9.) "In *Cel-Tech*, the Supreme Court addressed the term 'unfair' in the context of actions between competitors alleging anticompetitive practices, but it broadly criticized previous attempts to define 'unfair' as 'too amorphous' to provide guidance." (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 612 (*Graham*), quoting *Cel-Tech, supra*, 20 Cal.4th at pp. 184-185.) "Previously, courts defined 'unfair' as a practice that offends public policy or ' "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" ' or required courts to ' " 'weigh the utility of the

14

defendant's conduct against the gravity of the harm to the alleged victim.' " ' "  (*Ibid.*, quoting *Cel-Tech, supra*, 20 Cal.4th at p. 184.)

"The *Cel-Tech* court concluded it must 'require that any finding of unfairness to competitors under [Business and Professions Code] section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition' and, in actions challenging a direct competitor's 'unfair' act, defined the term as 'conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.' " (*Graham, supra*, 226 Cal.App.4th at p. 612, quoting *Cel-Tech, supra*, 20 Cal.4th at pp. 186-187.)

"Thereafter, the appellate courts split regarding the definition of 'unfair' business practices in consumer actions." (*Graham, supra*, 226 Cal.App.4th at p. 612.)  In *In re Ins. Installment Fee Cases* (2012) 211 Cal.App.4th 1395, 1418, we described the following three-way split:

> "One line of cases applied a pre-*Cel-Tech* balancing test for determining whether a business practice is unfair, under which the court examines the practice's ' " 'impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer.  In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . . .  [Citations.]'  . . .  [A]n 'unfair' business practice occurs when that practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.' " '  (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 718-719 . . . .)
>
> "A second line of cases adopted the following test or factors for determining unfairness set forth in section 5 of the Federal Trade

15

Commission Act (15 U.S.C. § 45(n): '(1) [t]he consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided.' (*Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1403. . . .)

"A third line of cases, represented by *Gregory v. Albertson's, Inc.* (2002) 104 Cal.App.4th 845 . . . (*Gregory*), applied a more rigorous test for unfairness in consumer UCL actions. The *Gregory* court disagreed with the balancing test applied by courts before *Cel-Tech*, stating: '*Cel-Tech* . . . may signal a narrower interpretation of the prohibition of unfair acts or practices in *all* unfair competition actions and provides reason for caution in relying on the broad language in earlier decisions that the [*Cel-Tech*] court found to be "too amorphous." Moreover, where a claim of an unfair act or practice is predicated on public policy, we read *Cel-Tech* to require that the public policy which is a predicate to the action must be "tethered" to specific constitutional, statutory or regulatory provisions.' "

"This court has consistently followed the *Gregory, supra*, 104 Cal.App.4th 845 . . . line of cases and has held a plaintiff alleging an unfair business practice must show the 'defendant's "conduct is tethered to an[] underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law." ' " (*Graham, supra*, 226 Cal.App.4th at p. 613.)

### C.  *Analysis*

The Association's proposed UCL cause of action does not allege conduct that is "unfair" under *Gregory*'s definition. The UCL claim is premised on the same facts as the unjust enrichment claim. However, as discussed in part I, *ante*, the Association has not cited any authority to which to "tether" its UCL claim. In fact, Respondents cite

16

authority suggesting California's public policy discourages rapid foreclosures, which is contrary to the Association's theory of the case. (See *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 903 ["[T]he California Legislature has expressed a strong preference for fostering more cooperative relations between lenders and borrowers who are at risk of foreclosure, so that homes will not be lost."].) Accordingly, the trial court did not abuse its discretion in denying the Association leave to amend a cause of action under the UCL's "unfair" prong.

### III.  *Evidentiary and Procedural Challenges*

The Association contends the trial court erred by dismissing Respondents before the court ruled on the Association's motion for leave to amend and by sustaining Respondents' evidentiary objections to the banker's declaration. Even if either of these actions was erroneous, any error was not prejudicial in light of our conclusions above.

### DISPOSITION

The judgment is affirmed. Respondents are entitled to their costs on appeal.


HALLER, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.

17