******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STONYBROOK GARDENS COOPERATIVE, INC. *v.* NEWREZ, LLC
## (AC 45904)

Elgo, Moll and Keller, Js.

### *Syllabus*

Pursuant to statute (§ 47-258), an association has a statutory lien on a condominium or cooperative unit for any assessment attributable to that unit, and, in all actions brought to foreclose a lien under that section, the lien is prior to first or second security interests encumbering only the unit owner's interest and perfected before the date on which the assessment sought to be enforced became delinquent to the extent of an amount equal to the common expense assessments, based on the periodic budget of the association, which would have become due in the absence of acceleration during the nine months immediately preceding the institution of an action to enforce the association's lien as well as the association's costs and reasonable attorney's fees in enforcing its lien.

The plaintiff, a unit owners association that had previously foreclosed a statutory lien in 2021 on a certain unit, which it thereafter purchased at a foreclosure sale, commenced the present omitted party action against the defendant pursuant to statute (§ 49-30). The defendant was the holder of a mortgage on the unit and had a first security interest but had been omitted from the plaintiff's 2021 foreclosure action. The plaintiff sought its common charges as foreclosed, court costs and legal fees of all current and past court actions, and the costs it incurred in remediating the unit as a redemption amount on the unit. The trial court defaulted the defendant for failure to appear and granted the plaintiff's motion for a judgment of strict foreclosure, setting the redemption amount at $34,410.56. The defendant subsequently filed an appearance and a motion to open and vacate the judgment, in which it alleged, inter alia, that, had the plaintiff correctly named it in the 2021 foreclosure action, its redemption amount would have been $8868.47 and that it would be inequitable and contrary to the requirements of § 49-30 to require it to pay any additional amounts to exercise its right of redemption. After hearing argument on the defendant's motion, the court denied the motion to open but reduced the redemption amount by approximately $5000. Although the court recognized the applicability of § 47-258 (b) and its nine month priority period, it determined that the equities of the case warranted the inclusion of other expenses incurred by the plaintiff, but not contemplated by § 47-258 (b), in the redemption amount. On the defendant's appeal to this court, *held* that the trial court abused its discretion in denying the defendant's motion to open the judgment of strict foreclosure for the purpose of correcting the redemption amount

to the extent that it was inconsistent with § 47-258 (b): in § 47-258 (b), the legislature established a specific priority scheme and delineated which liens may take priority over assessment liens and the extent to which assessment liens may take priority over even those priority liens, and the plaintiff's lien did not have priority for any assessments other than those common expense assessments that would have been due in the nine months preceding the commencement of the 2021 foreclosure action, as authorized under the applicable statutory scheme, and the costs and reasonable attorney's fees that the plaintiff incurred in enforcing its lien; moreover, § 49-30 did not have any bearing on the amount of the plaintiff's priority debt or authorize the court to exercise its equitable discretion in a manner inconsistent with § 47-258 (b); accordingly, this court reversed the judgment as it pertained to the redemption amount and remanded the case for the purpose of correcting the redemption amount to the extent it was inconsistent with § 47-258 (b).

Argued November 15, 2023—officially released April 23, 2024

*Procedural History*

Action to foreclose any legal interest held by the defendant in a certain unit in a cooperative owned by the plaintiff, brought to the Superior Court in the judicial district of Fairfield, where the defendant was defaulted for failure to appear; thereafter, the court, *Spader, J.*, granted the plaintiff's motion for a judgment of strict foreclosure and rendered judgment thereon; subsequently, the court denied the defendant's motion to open and vacate the judgment, and the defendant appealed to this court. *Reversed in part*; *further proceedings*.

*John P. Fahey*, for the appellant (defendant).

*Juda J. Epstein*, for the appellee (plaintiff).

*Opinion*

MOLL, J. In this omitted party action commenced pursuant to General Statutes § 49-30,[1] the defendant,

---

[1] General Statutes § 49-30 provides: "When a mortgage or lien on real estate has been foreclosed and one or more parties owning any interest in or holding an encumbrance on such real estate subsequent or subordinate to such mortgage or lien has been omitted or has not been foreclosed of such interest or encumbrance because of improper service of process or for any other reason, all other parties foreclosed by the foreclosure judgment shall be bound thereby as fully as if no such omission or defect had occurred

NewRez, LLC (NewRez), formerly known as New Penn Financial, LLC, doing business as Shellpoint Mortgage Servicing, appeals from the judgment of the trial court denying its motion to open and vacate the judgment of strict foreclosure rendered in favor of the plaintiff, Stonybrook Gardens Cooperative, Inc., a unit owners' association, in connection with NewRez' mortgage on a unit in Stonybrook Gardens Cooperative in Stratford. On appeal, NewRez claims that the court incorrectly determined the amount that NewRez was required to pay to exercise its right of redemption on the basis of a flawed application of § 49-30 and General Statutes § 47-258[2] and, therefore, improperly denied its motion to

and shall not retain any equity or right to redeem such foreclosed real estate. Such omission or failure to properly foreclose such party or parties may be completely cured and cleared by deed or foreclosure or other proper legal proceedings to which the only necessary parties shall be the party acquiring such foreclosure title, or his successor in title, and the party or parties thus not foreclosed, or their respective successors in title."

[2] General Statutes § 47-258 provides in relevant part: "(a) The association has a statutory lien on a unit for any assessment attributable to that unit or fines imposed against its unit owner. Unless the declaration otherwise provides, reasonable attorneys' fees and costs, other fees, charges, late charges, fines and interest charged . . . and any other sums due . . . are enforceable in the same manner as unpaid assessments under this section. . . .

"(b) Notwithstanding any provision in the declaration or bylaws to the contrary, a lien under this section is prior to all other liens and encumbrances on a unit except (1) liens and encumbrances recorded before the recordation of the declaration and, in a cooperative, liens and encumbrances which the association creates, assumes or takes subject to, (2) a first or second security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent, or, in a cooperative, a first or second security interest encumbering only the unit owner's interest and perfected before the date on which the assessment sought to be enforced became delinquent, and (3) liens for real property taxes and other governmental assessments or charges against the unit or cooperative. In all actions brought to foreclose a lien under this section or a security interest described in subdivision (2) of this subsection, the lien is also prior to all security interests described in subdivision (2) of this subsection to the extent of (A) an amount equal to the common expense assessments based on the periodic budget adopted by the association pursuant to subsection (a) of section 47-257 which would have become due in the absence of acceleration during the nine months immediately preceding institution of an action to enforce

open and vacate the foreclosure judgment. We conclude that the court's calculation of NewRez' redemption amount is inconsistent with § 47-258 (b) because it includes amounts other than those expressly permitted thereunder in calculating the plaintiff's priority debt. Accordingly, we reverse the judgment of the trial court as it pertains to the redemption amount.

The following facts and procedural history are relevant to our resolution of this appeal. In March, 2021, the plaintiff commenced an action seeking foreclosure of its statutory lien on a unit in the cooperative located at 26 Baird Court (unit) for outstanding common charges, interest, late fees, and costs owed to the plaintiff pursuant to § 47-258. See *Stonybrook Gardens Cooperative, Inc.* v. *Walker*, Superior Court, judicial district of Fairfield, Docket No. CV-21-6105220-S (2021 action). The named defendants were the heirs and beneficiaries of the unit's owner, Pamela Walker,[3] all of whom failed to appear and were defaulted.[4] On July 28, 2021, the trial court, *Spader, J.*, rendered a judgment of foreclosure by sale, in which, inter alia, it (1) determined that the fair market value of the unit was $45,000 and (2) appointed a foreclosure committee (committee). The plaintiff was

either the association's lien or a security interest described in subdivision (2) of this subsection, excluding any late fees, interest or fines which may be assessed by the association during the nine-month period, and (B) the association's costs and reasonable attorney's fees in enforcing its lien. A lien for any assessment or fine specified in subsection (a) of this section shall have the priority provided for in this subsection in an amount not to exceed the amount specified in subparagraph (A) of this subsection. This subsection does not affect the priority of mechanics' or materialmen's liens or the priority of liens for other assessments made by the association. . . ."

Section 47-258 was amended by No. 23-119, § 1, of the 2023 Public Acts, which made changes to the statute that are not relevant to this appeal. Accordingly, unless otherwise indicated, we refer to the current revision of the statute.

[3] Walker was the victim of a homicide that occurred at the unit in 2020.

[4] The complaint in the 2021 action also named a John Doe defendant, but the plaintiff subsequently withdrew the action against him.

the successful bidder at the ensuing foreclosure sale for $26,000, and, thereafter, the court approved the sale. On January 26, 2022, the court ratified the conveyance of the unit to the plaintiff and found that the plaintiff's lien was prior in right to the liens or claims of all named defendants. The court found that the total amount due from those defendants to the plaintiff was $24,258.33.

The plaintiff then commenced the present omitted party action against NewRez on May 3, 2022. In its complaint, the plaintiff alleged as follows. On March 26, 2020, Walker executed a mortgage on the unit as security for a debt owed to JPMorgan Chase Bank, N.A., in the amount of $42,750, which was recorded on the Stratford land records. NewRez subsequently became the holder of the mortgage by way of an assignment dated December 2, 2020, and recorded in the Stratford land records. Although NewRez has a first security interest in the unit due to this prior assignment, it had been omitted from the 2021 action. The plaintiff, therefore, brought the present omitted party action "to foreclose out any legal interest held by [NewRez]" in the unit. Finally, the plaintiff alleged that, "[i]f [NewRez] wishes to redeem the debt (common charges)," then "the plaintiff is seeking its common charges as foreclosed, court costs and legal fees of all current and past court action[s] and the costs it incurred in remediating the [unit]."

On July 7, 2022, the plaintiff filed a preliminary statement of debt, along with an affidavit of debt, stating that, "for the purposes of redemption," the amount owed to the plaintiff totaled $34,410.56 based on the sum of "unpaid common charges and assessments" from July 28, 2021, to July 31, 2022, plus the bill of costs and court-awarded attorney's fees from the 2021 action.[5]

---

[5] According to the plaintiff's calculations, the $34,410.56 amount comprised (1) $4511 in unpaid common charges and assessments as of the July 28, 2021 judgment of foreclosure by sale, (2) $25,008.89 in unpaid common charges and assessments incurred between July 28, 2021, and July 31, 2022, (3) $1515.67 in costs, and (4) $3375 in court awarded attorney's fees.

The plaintiff specified that its proposed redemption amount was "not inclusive of fees/costs of this action and remediation costs." On July 25, 2022, after NewRez had been defaulted for failure to appear, the court granted the plaintiff's motion for a judgment of strict foreclosure, determining that the fair market value of the unit was $40,000, setting the redemption amount at $34,410.56, and ordering the law days to commence on August 23, 2022.

On August 16, 2022, NewRez filed an appearance and a motion to open and vacate the July 25, 2022 judgment of strict foreclosure (motion to open), to which the plaintiff filed an objection. In the motion to open, New-Rez asserted the following: (1) the plaintiff failed to name or serve NewRez in the 2021 action despite the March 26, 2020 mortgage; (2) had the plaintiff correctly named NewRez, the redemption amount for NewRez would have been $8868.67;[6] and (3) as a result of the plaintiff's failure to name NewRez in the 2021 action, "[i]t would be both inequitable and contrary to the requirements of . . . § 49-30 to require" NewRez to pay any additional amounts to exercise its right of redemption. In its objection to the motion to open, the plaintiff argued, inter alia, that (1) the committee's prior title search did not find NewRez' assignment, (2) the costs and fees incurred in connection with the unit's sale should be included in the redemption amount, and (3) the plaintiff is entitled in equity to recover costs for "cleaning, removing and safeguarding the unit . . . ."

On August 22, 2022, the court heard argument on the motion to open and issued an order extending the law

---

[6] According to NewRez' calculations, the $8868.67 amount comprised (1) $3978 in common expense assessments entitled to priority (by calculating nine months of common charges at a rate of $442 per month in 2021), (2) $3375 in court-awarded attorney's fees, and (3) $1515.67 in costs. We would observe that, although the rate of common charges set by the association in 2020 was different from the 2021 rate, NewRez does not dispute the amount of common expense assessments entitled to priority.

days to commence on October 18, 2022. On August 29, 2022, the court made a preliminary finding "that the mortgage and assignment were fairly obvious to find [online]. . . . The default in the payment of common charges and the mortgage is unfortunately obvious to the court, as well, based on other pending matters in the courthouse and public news accounts of the occurrences at the [unit] in the summer of 2020. The plaintiff may have legitimate related expenses and [NewRez] would have knowledge of the inability of the original defendant to pay cooperative charges while also unable to pay down the mortgage long before the 2021 action was brought by the plaintiff." In addition, the court directed the parties to submit documentation[7] for it to consider in making its ruling. The parties thereafter complied with the order and submitted the additional documents.

On September 8, 2022, the court issued a memorandum of decision in which it denied the motion to open but, upon further review of the debt, reduced the amount that NewRez was required to pay to exercise its right to redeem to either $28,503.18 or $28,954.18.[8] The court found that NewRez was an "omitted party" under § 49-30 and that, had the plaintiff named NewRez in the 2021 action, "it is likely that NewRez would have requested a law day and redeemed on its law day, or, in the event of a sale (which is what occurred), it clearly

---

[7] The plaintiff was ordered to file (1) a copy of the title search obtained by the committee in connection with the 2021 action and (2) the ledger reflecting the balance of unpaid common charges, assessments, fees, and costs incurred by the plaintiff as described in the plaintiff's affidavit of debt dated July 7, 2022. NewRez was ordered to file a copy of the title search relating to a lis pendens filed "after title vested in the [plaintiff] that purports to indicate that [NewRez'] title search may have missed the committee deed recorded [on] December 21, 2021 . . . ."

[8] The court stated that, "[t]o redeem this action, [NewRez] must pay $28,503.18 by September 30, 2022, or $28,954.18 after September 20, 2022, but before its law day on October 18, 2022 (adding the October, 2022 assessment) . . . ." (Emphasis omitted; footnote omitted.)

would have satisfied the judgment prior to the foreclosure sale." The court determined, however, that (1) the unpaid common expense assessments that were entitled to priority pursuant to § 47-258 (b) were those assessments incurred from March through December, 2021, and (2) NewRez was required to pay the unpaid common expense assessments, as well as the plaintiff's "legal fees and costs from the [2021] action and preservation fees," in order to redeem.

Although the court recognized the applicability of § 47-258 (b) and its nine month priority period, it determined that the equities of the case warranted the inclusion of other expenses incurred by the plaintiff, but not contemplated by § 47-258 (b), in the redemption amount.[9] As the court summarized, "the plaintiff here missed serving [NewRez] in [the 2021] action and has gone two years without payment of assessments and incurring legal fees and costs and preservation costs. [NewRez] has gone over two years without payments on its mortgage . . . and took no earlier steps to protect its interests. Only the committee had a decent usable title search, and [the committee] failed to advise anybody of issues in the [2021] action. . . .

"It would be inequitable to allow a mortgage holder to take no action and just cap their obligations to an association at [nine] months of debt when they . . . sat back on enforcing their rights. It is also inequitable to let an association continue accruing debt that was avoidable had it provided proper notice to the mortgage holder in the first place. The neighboring members of the association are being harmed by the nonperforming nature of this unit."

The court concluded that "[the plaintiff] should be allowed to collect preservation fees and costs and its

---

[9] The court characterized the case as one that "is at the crossroads of law and equity" and stated that it "weigh[ed] the equitable factors heavily in reaching [its] decision."

legal fees and costs from enforcing its debt and the posttitle vesting assessments," reasoning that "[m]any of the expenses [the plaintiff] incurred . . . are expenses that the mortgage holder would have incurred once [Walker] could no longer maintain the property" and NewRez was "served . . . in May [of 2022] and took no action to defend itself earlier." On September 19 and 27, 2022, NewRez filed two motions to reargue and reconsider the denial of its motion to open, both of which the court denied.[10] This appeal followed.

On appeal, NewRez claims that the court improperly denied its motion to open on the basis of an incorrect application of §§ 47-258 and 49-30. NewRez argues that the court's determination of the redemption amount is inconsistent with § 47-258 (b), which expressly limits the amount of the plaintiff's debt that is entitled to priority over NewRez' mortgage. In essence, NewRez asserts that, as the holder of a first security interest on

---

[10] In both motions to reargue and reconsider, NewRez asserted that, prior to commencing the 2021 action, the plaintiff failed to comply with the notice requirements of § 47-258 (m), which provides, inter alia, that costs or attorney's fees shall be excluded from the priority amount if an association fails to send written notice of default to the holders of all security interests prior to commencing an action to foreclose its lien on a unit. In denying the September 19, 2022 motion, the court stated: "While the court agrees that it is entirely likely that the plaintiff did not provide notice of default to [NewRez] prior to commencing the [2021] action (as it admits to not knowing there was a mortgage), foreclosures are equitable in nature, and the court also found that [NewRez] did not actively enforce its rights upon the borrowers' default. The court issued a decision after careful consideration of the equities of all of the parties. The issue of § 47-258 (m) was not raised in the . . . motion [to open] by [NewRez] and is being raised for the first time in this motion to reconsider. Upon review of the memorandum of decision and the equitable factors of this case, the motion to reconsider that decision is denied." The court summarily denied the substantively identical September 27, 2022 motion. NewRez has not appealed from the court's denials of its motions to reargue and reconsider and will not be able to revisit this issue upon remand. Moreover, counsel for NewRez made clear during oral argument before this court that it was not seeking to avoid liability for the plaintiff's fees and costs incurred in the 2021 action and the present action.

the unit, it is required only to pay the plaintiff's priority debt in order to exercise its statutory right to redeem. The plaintiff, while recognizing that "[t]he amount the court ordered [NewRez] to pay included sums that were greater than the nine month priority [debt]," asserts that the court was permitted to exercise its broad equitable powers even in contravention of the statute. We agree with NewRez.

The following standard of review and legal principles are relevant to our resolution of NewRez' claim. "In reviewing the denial of a motion to open a judgment of strict foreclosure, we are limited to determining whether the court abused its discretion in so ruling or based its ruling on some error of law. If neither such error is established, the court's ruling must be upheld." *USAA Federal Savings Bank* v. *Gianetti*, 197 Conn. App. 814, 820, 232 A.3d 1275 (2020).

We recognize the long-standing principle that a "[f]oreclosure is peculiarly an equitable action, and the court may entertain such questions as are necessary to be determined in order that complete justice may be done. . . . [B]ecause a mortgage foreclosure action is an equitable proceeding, the trial court may consider all relevant circumstances to ensure that complete justice is done. . . . [E]quitable remedies are not bound by formula but are molded to the needs of justice. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Citation omitted; internal quotation marks omitted.) *Milford* v. *Recycling, Inc.*, 213 Conn. App. 306, 310, 278 A.3d 1119, cert. denied, 345 Conn. 906, 282 A.3d 981 (2022).

The court's equitable powers, however, are not unfettered. "The law governing strict foreclosure lies at the crossroads between the equitable remedies provided by the judiciary and the statutory remedies provided

by the legislature. . . . In exercising its equitable discretion, however, the court must comply with mandatory statutory provisions that limit the remedies available to a foreclosing mortgagee [or lien holder]. . . . It is our adjudicatory responsibility to find the appropriate accommodation between applicable judicial and statutory principles. Just as the legislature is presumed to enact legislation that renders the body of the law coherent and consistent, rather than contradictory and inconsistent . . . [so] courts must discharge their responsibility, in case by case adjudication, to assure that the body of the law—both common and statutory—remains coherent and consistent." (Citations omitted; footnote omitted; internal quotation marks omitted.) *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 256–57, 708 A.2d 1378 (1998).

Mindful of these principles, we turn to § 47-258, titled "Lien for assessments and other sums due association. Enforcements." That statute "establishes the priority of liens with respect to foreclosures involving condominiums [and cooperatives]. As our Supreme Court noted in *Hudson House Condominium Assn., Inc.* v. *Brooks*, 223 Conn. 610, 614, 611 A.2d 862 (1992), '[l]iens for delinquent common expense assessments on individual units within an association are creatures of statute' and the governing statute, § 47-258 (b), sets forth the priority of these liens with respect to other liens. Our Supreme Court also recognized that this legislative scheme departs from the common law rule of first in time equals first in right. Id. Section 47-258 (b) establishes a specific priority scheme and delineates which liens may take priority over assessment liens and the extent to which assessment liens may take priority over even those priority liens. This court must respect the intricate priority scheme that the legislature has established." *Dime Savings Bank of New York, FSB* v. *Muranelli*, 39 Conn. App. 736, 739, 667 A.2d 803 (1995), cert. denied, 236 Conn. 902, 670 A.2d 321 (1996).

Specifically, § 47-258 (b) provides in relevant part: "In all actions brought to foreclose a lien under this section or a security interest . . . the lien is also prior to all [first or second] security interests . . . to the extent of (A) an amount equal to the common expense assessments based on the periodic budget adopted by the association . . . which would have become due in the absence of acceleration during the nine months immediately preceding institution of an action to enforce either the association's lien or a security interest . . . excluding any late fees, interest or fines which may be assessed by the association during the nine-month period, and (B) the association's costs and reasonable attorney's fees in enforcing its lien. A lien for any assessment or fine specified in subsection (a) of this section shall have the priority provided for in this subsection in an amount not to exceed the amount specified in subparagraph (A) of this subsection."

Section 47-258 (b) thus "establishes a super priority lien, as against a first or second security interest, for those assessments that 'accrued during the [nine] months immediately preceding the commencement of the foreclosure action . . . .' *Hudson House Condominium Assn., Inc.* v. *Brooks*, supra, 223 Conn. [612]. The intricacies of the scheme are evident. The statute specifies which liens shall have priority and makes all others, including, for example, judgment liens, inferior. This scheme establishes the order in which the lienholders shall be paid from the available equity in the subject real property." *Dime Savings Bank of New York, FSB* v. *Muranelli*, supra, 39 Conn. App. 740. Moreover, costs and reasonable attorney's fees incurred in the enforcement of the lien are included in the debt entitled to priority. See General Statutes § 47-258 (b); see also *Hudson House Condominium Assn., Inc.* v. *Brooks*, supra, 617 n.4 (noting that amendment to prior revision

of § 47-258 (b) "clarified that attorney's fees and costs are included in the priority debt").

The plaintiff argues that the court's decision to exceed the parameters of § 47-258 (b) by including sums beyond the plaintiff's priority debt in the redemption amount was an exercise of its equitable discretion "to offset the benefits to both [NewRez] and [the plaintiff] that would have accrued on account of the failure to name [NewRez] in the [2021 action]." In particular, the plaintiff asserts that it spent "significant costs to remodel and improve the severely damaged [unit]" and, therefore, the court's decision "prevent[ed] inequitable gains by either party." For the reasons that follow, we conclude that the court improperly crafted an equitable remedy in a manner that contravenes the priority scheme established by the legislature.

"The legislature already considered the position of . . . associations with respect to other lienholders, and, had it wanted to enhance the association's priority further, it would have done so. The statute states that the association's interest, except for the super priority, shall be subordinate to the first and second security interest." *Dime Savings Bank of New York, FSB* v. *Muranelli*, supra, 39 Conn. App. 741.

Further, as our Supreme Court has explained, "[w]hen the statute is clear . . . the appropriate rule is that one cannot be *unjustly* enriched by a statutory enactment. . . . While the plaintiff may disagree with the equities of limiting the § 47-258 (b) priority . . . this is a matter not for the judiciary, but rather for the legislature that enacted the statute." (Citation omitted; emphasis in original.) *Hudson House Condominium Assn., Inc.* v. *Brooks*, supra, 223 Conn. 615–16; see id., 614–16 (rejecting claim that common expense assessments accrued during pendency of action were entitled

to priority under General Statutes (Rev. to 1989) § 47-258 (b)).

Simply put, the plaintiff's lien does not have priority for any assessments other than those common charges authorized under the applicable statutory scheme and the costs and reasonable attorney's fees that the plaintiff incurred in enforcing its lien. Pursuant to § 47-258 (b), the plaintiff's debt has priority over NewRez' mortgage interest only to the extent of an amount equal to the common expense assessments that would have been due in the nine months preceding the commencement of the 2021 action, plus costs and reasonable attorney's fees authorized under the statute, and excluding any late fees, interest, or fines assessed during that period. See, e.g., *Sunrise Common Condominium Assn., Inc.* v. *Bello*, Superior Court, judicial district of Fairfield, Docket No. CV-12-6028307-S (March 21, 2014) (57 Conn. L. Rptr. 746, 748) ("[Section 47-258 (b)] is clear that common expenses are the association's budgeted expenses . . . . [E]xpenses entitled to [super priority] are not expenses related to water damage to a unit, which expenses are occurrence related and not budget expenses.").

Finally, although it may be correct that, as the plaintiff indicates, the present omitted party action "differs from the usual condominium lien foreclosure," we cannot discern § 49-30 to have any bearing on the amount of the plaintiff's priority debt, or to authorize the court to exercise its equitable discretion in a manner inconsistent with § 47-258 (b). "[T]he . . . language [of § 49-30] unambiguously declares that it provides for a *cure* for the omission of an encumbrancer. 'In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . .' General Statutes § 1-1 (a). In common parlance as well as case law, 'cure' means to restore to a prior state of health or soundness. . . .

[T]he legislature intended [§ 49-30] to provide a means of restoring the title to the condition that would have existed had the encumbrancer not been omitted." (Citations omitted; emphasis in original.) *Federal Deposit Ins. Corp.* v. *Bombero*, 37 Conn. App. 764, 771, 657 A.2d 668 (1995), appeal dismissed, 236 Conn. 744, 674 A.2d 1324 (1996). Here, had NewRez not been improperly omitted from the 2021 action, it would have been required only to pay the amount prescribed by § 47-258 (b) to exercise its right of redemption.

In sum, we conclude that, pursuant to § 47-258 (b), the amount that NewRez was required to pay to redeem the unit was limited to the plaintiff's priority debt, meaning the common expense assessments that would have been due in the nine months preceding the commencement of the 2021 action, plus costs and reasonable attorney's fees as authorized by the statute. Therefore, we further conclude that the court abused its discretion in denying the motion to open the July 25, 2022 judgment of strict foreclosure for the purpose of correcting the redemption amount to the extent that it is inconsistent with § 47-258 (b).

The judgment is reversed only as to the calculation of the redemption amount and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.