NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11969


   DRUMMER BOY HOMES ASSOCIATION, INC.  vs.  CAROLYN P. BRITTON &
                           another.[1]



      Middlesex.     January 7, 2016. - March 29, 2016.

   Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
                          Hines, JJ.



Condominiums, Common expenses.  Real Property, Condominium.
     Lien.  Mortgage, Priority.  Practice, Civil, Standing,
     Attorney's fees.




     Civil actions commenced in the Concord Division of the
District Court Department on August 8, 2007; February 6, 2008;
and October 6, 2008.

     After consolidation, the case was heard by Peter J.
Kilmartin, J., on a motion for summary judgment, and a motion to
alter and amend the judgment was also heard by him.

     After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


     Thomas O. Moriarty (Jennifer L. Barnett with him) for the
plaintiff.
     Michael A.F. Johnson, of the District of Columbia (Rhiannon
A. Campbell with him), for Federal Housing Finance Agency &
others, amici curiae.
     Randy A. Britton, pro se.

---

     [1] Randy A. Britton.

The following submitted briefs for amici curiae:
Alan E. Lipkind & Elizabeth Brady Murillo for Avidia Bank & others.
Henry A. Goodman, Ellen A. Shapiro, Charles A. Perkins, Jr., Scott J. Eriksen, & David R. Chenelle for Community Associations Institute.
Clive D. Martin & Diane R. Rubin for Real Estate Bar Association for Massachusetts, Inc.
Stephen C. Reilly & Jennifer E. Greaney for Bank of America, N.A.


SPINA, J.   At issue in this case is whether G. L. c. 183A, § 6, permits an organization of unit owners to establish multiple contemporaneous priority liens on a condominium unit by filing successive legal actions to collect unpaid monthly common expense assessments (common expenses).[2]  We conclude that the statute allows for such liens.  Accordingly, we reverse the judgment of the Appellate Division of the District Court,[3] which reached a contrary conclusion.[4]

---

[2] Common expenses are defined in G. L. c. 183A, § 1, as "the expenses of administration, maintenance, repair or replacement of the common areas and facilities, and expenses declared common expenses by this chapter."

[3] The Appellate Division of the District Court is encompassed within the definition of a "lower court" from whose decision an appeal may be taken to an appellate court.  See Mass. R. A. P. 1 (c), as amended, 454 Mass. 1601 (2009).

[4] We acknowledge the amicus briefs submitted in support of Drummer Boy Homes Association, Inc. (association), by Avidia Bank, Brookline Bank, Mutual of Omaha Bank, North Shore Bank, and Rockland Trust Company; Community Associations Institute; and the Real Estate Bar Association for Massachusetts, Inc.  We also acknowledge the amicus briefs submitted in support of the decision of the Appellate Division of the District Court by Bank of America, N.A.; and the Federal Housing Finance Agency, the

1.  Background.  Over the last ten years, the parties in this case have been involved in protracted and contentious litigation concerning parking rights at a condominium complex. Our recitation of the factual background and procedural history encompasses only those matters that relate to the specific issues now before this court.  Drummer Boy Condominium II, which consists of twelve individual units, is one of nine condominiums comprising Drummer Boy Green in Lexington.  In the aggregate, the nine condominiums have approximately 150 units.  The defendant, Carolyn P. Britton, purchased a unit in Drummer Boy Condominium II in May, 2001.  In April, 2008, she transferred title to the unit by quitclaim deed to herself and her husband, defendant Randy A. Britton, as tenants by the entirety.[5]

Around 2004, the Brittons began to withhold payment of their monthly common expenses because of a dispute concerning parking rules and related fines.  On August 8, 2007, the Drummer Boy Homes Association, Inc. (association),[6] commenced an action

---

Federal National Mortgage Association, and the Federal Home Loan Mortgage Corporation.

[5] Because they share the same last name, we refer to the Brittons individually by their first names.

[6] The association originally filed suit as the "Board of Directors of the Drummer Boy Homes Association, Inc."  As will be discussed infra, the Appellate Division of the District Court corrected the name of the plaintiff to its present form.

in the District Court against the Brittons.[7]  It sought to recover unpaid common expenses and to enforce a priority lien pursuant to G. L. c. 183A, § 6 (c), and G. L. c. 254, §§ 5, 5A, that would be superior to the first mortgage to the extent of the common expenses due during the six months immediately preceding the commencement of the action.[8]  The Brittons continued to withhold payment of their monthly common expenses. On February 6, 2008, the association commenced a second action to recover the unpaid common expenses that had accrued since the filing of its first action, and to enforce a second six-month priority lien.  When the Brittons still did not pay their monthly common expenses, the association commenced a third action on October 6, 2008, to recover the unpaid common expenses that had accrued since the filing of its second action, and to

---

[7] The complaint named Carolyn as a defendant because she held title to the unit at the time the suit was brought.  Randy was also named as a defendant and party in interest because he was the holder of a second mortgage on the condominium unit. After the association asserted that Randy, who has a juris doctor degree but is not admitted to the bar, had engaged in the unauthorized practice of law by filing a motion to dismiss the complaint, Carolyn transferred ownership of the unit to herself and Randy.  The Brittons then proceeded together as pro se defendants.  Coldwell Banker Mortgage, the holder of the first mortgage on the Brittons' unit, and Massachusetts Educational Financing Authority, the holder of another mortgage on the unit, were also named as defendants and parties in interest in the complaint.  Although each entered an appearance, neither has participated in the litigation or filed an appeal.

[8] The association voluntarily dismissed two earlier actions against Carolyn for the nonpayment of common expenses after she paid the amounts due.

enforce a third six-month priority lien. The association subsequently filed a motion to consolidate the three actions, which was allowed.

On March 9, 2009, the association filed a motion for summary judgment. Following a hearing, a judge allowed the motion and entered judgment in favor of the association in the amount of $22,742.08.[9] The judge first determined that the association was the proper entity to seek recovery of unpaid common expenses pursuant to G. L. c. 183A, § 6. He then concluded that there were no disputed issues of material fact regarding the association's ability to recover unpaid common expenses and related fines, as well as reasonable attorney's fees and costs associated with the collection of such expenses. The judge pointed out that, notwithstanding the Brittons' arguments about the purported illegality of the parking policies at Drummer Boy Green, they never initiated an action to resolve their parking dispute, and they could not remedy the matter simply by ignoring the fines and refusing to pay their common

---

[9] The judge pointed out that, apart from the issues raised in the association's original causes of action, the court already had resolved all other matters presented in this litigation, including the Brittons' request for injunctive relief and their various motions, counterclaims, and third-party actions. The judgment in favor of the association was comprised of $9,887.22 in unpaid common expenses for the three six-month periods that were the subject of the consolidated actions (which included common expenses, fines, late fees, and costs), $12,314 in reasonable attorney's fees, and $540.86 in costs of collection.

expenses.[10]  The judge also concluded, however, that the filing of successive actions was not consistent with G. L. c. 183A, § 6 (c), and that the association's lien priority over the first mortgagee for common expenses, plus reasonable attorney's fees and costs, was limited to the one six-month period preceding the commencement of the first of the consolidated actions.  That being the case, the judge established a priority lien under § 6 (c) in the amount of $15,054.86.[11]  The judge denied the association's subsequent motion to alter or amend the judgment to reflect three successive six-month periods of lien priority.

Both parties appealed to the Appellate Division of the District Court.  By decision dated July 20, 2011, a panel of the Appellate Division affirmed the judgment in all respects.  After reviewing the parties' extensive briefing, the panel determined that only two issues had been properly raised:  standing and

---

[10] A unit owner may not challenge common expenses by refusing to pay them, but, instead, should pay under protest and then seek a judicial determination of the legality of the assessment, as well as suitable reimbursement.  See Trustees of the Prince Condominium Trust v. Prosser, 412 Mass. 723, 726 (1992) ("A system that would tolerate a unit owner's refusal to pay an assessment because the unit owner asserts a grievance, even a seemingly meritorious one, would threaten the financial integrity of the entire condominium operation"); Blood v. Edgar's, Inc., 36 Mass. App. Ct. 402, 404-406 (1994).

[11] The judge determined the amount of the priority lien by adding together the unpaid common expenses for only the six months immediately preceding the association's first action against the Brittons ($2,200), plus reasonable attorney's fees ($12,314), and the costs of collection ($540.86).

statutory interpretation.  First, the panel considered the Brittons' argument that the plaintiff was not a legal entity entitled to sue and, therefore, the judgment was void.  The association conceded that it should have brought suit in the name of "Drummer Boy Homes Association, Inc.," rather than "Board of Directors of the Drummer Boy Homes Association, Inc." The panel corrected the misnomer, concluding that the litigation was brought by an existing legal entity with authority to sue, and that the Brittons suffered no prejudice as a result of the amendment.

Next, the panel considered the association's argument that, pursuant to G. L. c. 183A, § 6 (c), it was entitled to lien priority for three successive six-month periods.  After reviewing the language of the statute, together with its underlying policy of balancing a condominium association's need to enforce the collection of unpaid common expenses and a first mortgagee's desire to protect the priority of its security interest, the panel concluded that the association was entitled to only one six-month period of lien priority.  In the panel's view, extending a condominium association's lien priority beyond one six-month period of time would undermine the purpose of the statutory scheme.  The panel also stated that the association was entitled to recover reasonable appellate attorney's fees and costs.

Both parties appealed to the Appeals Court, which affirmed the judgment of the Appellate Division. Drummer Boy Homes Ass'n, Inc. v. Britton, 86 Mass. App. Ct. 624 (2014). We then granted the association's application for further appellate review.

2. Standing. As an initial matter, the Brittons contend that because the association is not the "organization of unit owners" for Drummer Boy Condominium II, it does not have standing to bring a cause of action pursuant to G. L. c. 183A for the recovery of unpaid common expenses. As a consequence, the Brittons continue, this court lacks subject matter jurisdiction to consider the association's claims under the statute, and, therefore, summary judgment should enter in their favor. We disagree.[12]

A condominium is a creature of statute. See G. L. c. 183A; Kaplan v. Boudreaux, 410 Mass. 435, 442 (1991). General Laws c. 183A, § 6 (a) (i), states that "[t]he organization of unit

_____

[12] The Brittons properly raised only one issue before the Appellate Division -- whether the judgment of the District Court was void due to the misnomer of the plaintiff. To the extent that the Brittons have raised other issues in the present appeal, they are waived. We consider the matter of the proper plaintiff because the issue of standing is one of subject matter jurisdiction and can be raised at any time up until the final judgment on appeal. See generally Indeck Maine Energy, LLC v. Commissioner of Energy Resources, 454 Mass. 511, 516 (2009). See also Reporters' Notes to Mass. R. Civ. P. 12 (h) (3), Mass. Ann. Laws Court Rules, Rules of Civil Procedure, at 194 (LexisNexis 2015-2016).

owners shall have a lien on a unit for any common expense assessment levied against that unit from the time the assessment becomes due." Pursuant to G. L. c. 183A, § 1, the "organization of unit owners" is "the corporation, trust or association owned by the unit owners and used by them to manage and regulate the condominium."

On June 7, 1976, the trustees of Drummer Boy Trust (trustees), together with their successors and assigns, executed a Declaration of Covenants, Easements, and Restrictions (declaration) to create Drummer Boy Green. In turn, the declaration provided for the creation of the association as the entity to which the trustees would delegate and assign "the powers of maintaining and administering . . . common areas and facilities and administering and enforcing the covenants and restrictions and collecting and disbursing the assessments and charges hereinafter created." The association was incorporated under the laws of Massachusetts for the purpose of exercising these functions.[13] The declaration further states that "[e]very

---

[13] The declaration states that its covenants, easements, and restrictions "shall run with and bind the land and shall inure to the benefit of and be enforceable by the [association] for a term of 30 years . . . , after which time said covenants and restrictions shall be automatically extended for successive periods of ten (10) years unless an instrument signed by the then Owners of two-thirds of the Living Units has been recorded, agreeing to terminate or change said covenants and restrictions in whole or in part." On November 9, 2005, fifty per cent or more of the unit owners of Drummer Boy Green extended the

person who or entity which is a record owner of a fee or undivided fee interest in any Living Unit shall be a member of the [association]." As set forth in the covenant for maintenance assessments, if an assessment is not paid in a timely manner, the association "may bring an action at law against the [unit owner] personally obligated to pay the same or to foreclose the lien against the Living Unit."

On September 30, 1976, the trustees executed a master deed, submitting specified land, together with the buildings and improvements erected thereon, and all easements, rights, and appurtenances belonging thereto, to the provisions of G. L. c. 183A, thereby creating Drummer Boy Condominium II. It was subject to the terms of the declaration, and the covenants, easements, and restrictions set forth therein were incorporated by reference into the master deed. Section 8 of the master deed states that "Drummer Boy Condominium II Association" is the unincorporated association of unit owners that will manage and regulate Drummer Boy Condominium II. Article I, Section 2, of the bylaws adopted by Drummer Boy Condominium II Association (bylaws) provides that such entity is the "organization of [u]nit [o]wners" as defined in G. L. c. 183A. At the same time, Article I, Section 3, of the bylaws provides that the

---

restrictions set forth in the declaration for a period of twenty years, until June 7, 2026.

association (that is, Drummer Boy Homes Association, Inc.) has been organized under Massachusetts law for the purpose of administering and enforcing the declaration, and that the declaration vests in the association "certain responsibilities for the maintenance of the Common Elements described in the Master Deed."  Moreover, Article VI, Section 1, of the bylaws states that "[f]or the duration of the Declaration, the Common Expenses shall be determined, assessed and collected by the [association] as provided in the Declaration and its By-Laws, on behalf of [Drummer Boy Condominium II] and all other Drummer Boy Condominiums . . . ."

In essence, pursuant to the master deed and the bylaws, Drummer Boy Condominium II Association delegated the exclusive authority to assess and collect common expenses to the association.  That being the case, the association functions as the "organization of unit owners" to recover unpaid common expenses and to enforce a priority lien in accordance with G. L. c. 183A, § 6.  We conclude that the association had standing to bring the present action.

3.  Successive priority liens.  The association contends that because a unit owner's responsibility to pay monthly common expenses is a recurring obligation, an organization of unit owners can file successive legal actions under G. L. c. 183A, § 6, to establish and enforce multiple contemporaneous liens on

a condominium unit, each with a six-month period of priority over the first mortgage, for the recoupment of successive periods of unpaid common expenses.  We agree.

Our analysis of G. L. c. 183A, § 6, is guided by the familiar principle that "a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated."  Hanlon v. Rollins, 286 Mass. 444, 447 (1934).  See Sullivan v. Brookline, 435 Mass. 353, 360 (2001), and cases cited.  "Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense."  Twomey v. Middleborough, 468 Mass. 260, 268 (2014).  "When amending a statute or enacting a new one, the Legislature is presumed to be aware of prior statutory language."  Ropes & Gray LLP v. Jalbert, 454 Mass. 407, 412-413 (2009).

An organization of unit owners is entitled to have a lien on a condominium unit for unpaid common expenses from the time such expenses become due.  See G. L. c. 183A, § 6 (a) (i).  General Laws c. 183A, § 6 (c), first par., states, in relevant

part, that "[w]hen any portion of the unit owner's share of the common expenses has been delinquent for at least sixty days . . . , the organization of unit owners shall send a notice stating the amount of the delinquency to the unit owner . . . [and] to the first mortgagee."  Then, "thirty days prior to the filing of an action by the organization of unit owners to enforce its lien for delinquent common expenses, the organization of unit owners shall send a notice stating its intention to file said action to the first mortgagee."[14]  Id. The evident purposes of such notices are to give the unit owner an opportunity to remedy the delinquency so as to avoid an enforcement action that may result in foreclosure, and to apprise the first mortgagee of the status of the property so it can take appropriate action, as necessary, to protect its security interest.

Prior to 1992, a lien on a condominium unit for unpaid common expenses was subordinate to the first mortgage of record. See St. 1991, c. 554, § 1.  As a consequence, the first mortgagee had little incentive to initiate a foreclosure action against the unit owner because its security interest was not in

---

[14] A lien established under G. L. c. 183A, § 6, "shall be enforced in the manner provided in [G. L. c. 254, §§ 5, 5A]." G. L. c. 183A, § 6 (c), second par.  In turn, G. L. c. 254, § 5, states that such a lien "shall be enforced by a civil action brought . . . in the district court in the judicial district where [the] land lies."

jeopardy. At the same time, during periods of falling real estate values, when the mortgage on a condominium unit might equal or exceed the fair market value of the unit, a foreclosure action by the first mortgagee could result in insufficient funds to satisfy a condominium association's lien. In 1992, the Legislature recognized that "a serious public emergency" had developed with respect to housing created pursuant to G. L. c. 183A. St. 1992, c. 400, § 1. "This emergency ha[d] been created by a policy of disinvestment by unit owners who [were] no longer paying their lawfully assessed share of the common expenses. Without the payment of these common expenses, condominium buildings [were] falling into physical and financial disrepair, causing neighborhood blight, and jeopardizing the public health, safety, and welfare." Id. The Legislature's response was to "take action to aid condominium associations" by enacting numerous amendments to G. L. c. 183A. Id.

Significantly, the Legislature inserted the second paragraph of G. L. c. 183A, § 6 (c), to establish the priority of diverse liens that could be placed on a condominium unit. See St. 1992, c. 400, § 9. It states, in relevant part, as follows:

> "[A] lien [under G. L. c. 183A, § 6, for unpaid common expenses] is prior to all other liens and encumbrances on a unit except (i) liens and encumbrances recorded before the recordation of the master deed, (ii) a first mortgage on the unit recorded before the date on which the assessment

> sought to be enforced became delinquent, and (iii) liens for real estate taxes and other municipal assessments or charges against the unit.  This lien is also prior to the mortgages described in clause (ii) above to the extent of the common expense assessments based on the budget adopted pursuant to [G. L. c. 183A, § 6 (a),] which would have become due in the absence of acceleration <u>during the six months immediately preceding institution of an action to enforce the lien</u> and to the extent of any costs and reasonable attorneys' fees incurred in the action to enforce the lien . . ." (emphasis added).

G. L. c. 183A, § 6 (c), second par.  The statute further provides that "payment of the assessments with respect to such six month period, and to the extent of any costs or reasonable attorneys' fees incurred in said action, shall serve to discharge such lien to the extent that such lien is prior to such mortgages described in clause (ii) above." Id.  Moreover, "[t]he priority amount shall not include any amounts attributable to special assessments, late charges, fines, penalties, and interest assessed by the organization of unit owners." Id.  In essence, when a condominium association initiates a lien enforcement action, it can obtain so-called "super-priority" status over a first mortgagee for six months' worth of common expenses.  See id.

General Laws c. 183A, § 6 (c), second par., is silent with respect to whether, in the face of ongoing nonpayment of common expenses, an organization of unit owners can initiate subsequent actions to establish priority liens beyond one six-month period. Nonetheless, the insertion of the fourth and fifth paragraphs of

G. L. c. 183A, § 6 (c), as discussed infra, suggests that the Legislature anticipated that condominium associations might initiate multiple lien actions. See St. 1998, c. 242, § 6. Indeed, given the Legislature's recognition of the "serious public emergency" caused by unit owners who fail to pay their common expenses, it is reasonable to think that the Legislature would view such payment delinquencies as an ongoing problem necessitating more than the heretofore limited remedy of one lien for six months' worth of common expenses. See Blood v. Edgar's, Inc., 36 Mass. App. Ct. 402, 405 n.2 (1994) (Legislature consistently has amended G. L. c. 183A "to strengthen common expense collection"). The financial stability of the condominium form of home ownership depends, in significant part, on the timely receipt of common expenses by the organization of unit owners. See Trustees of the Prince Condominium Trust v. Prosser, 412 Mass. 723, 726 n.3 (1992) ("the collection of all common area charges is important to the viability of any condominium enterprise").

In 1998, the Legislature inserted the fourth and fifth paragraphs of G. L. c. 183A, § 6 (c), to establish the procedure by which a first mortgagee could maintain its lien priority notwithstanding the initiation of an enforcement action by an organization of unit owners to recoup unpaid common expenses.

See St. 1998, c. 242, § 6.  General Laws c. 183A, § 6 (c),

fourth par., states, in relevant part, as follows:

> "The organization of unit owners shall take no further
> action to enforce its priority lien<u>s</u> against a particular
> unit for common expenses if the first mortgagee agrees in
> writing that a priority lien exists without the requirement
> of instituting an action, as to such enforcement and pays,
> within [sixty] days of said writing, the following
> prescribed amounts:  (1) so much of any delinquent
> assessments on that unit for regularly recurring budgeted
> common expenses over a period for six months immediately
> preceding the notice of delinquency that would constitute a
> priority amount if an action had been commenced on the date
> the organization gives its delinquency notice to the
> mortgagee; (2) costs and reasonable attorney's fees
> incurred by the organization at the time of said writing by
> the first mortgagee to collect outstanding common expenses
> . . . ; [and] (3) all future common expenses, and special
> assessments other than special assessments for improvements
> made pursuant to [G. L. c. 183A, § 18,] assessed against
> that unit from the date of said notice until such time as
> the mortgagee's mortgage is foreclosed or otherwise no
> longer encumbers the unit.  The amount which the first
> mortgagee, if it so elects, would be required to pay to
> cause the organization not to proceed to enforce its
> priority lien<u>s</u> shall <u>not</u> include any amounts attributable
> to late charges, fines, penalties, and interest assessed by
> the organization of unit owners . . ." (emphasis added).[15]

In addition, G. L. c. 183A, § 6 (c), fifth par., provides that,

when requested by the first mortgagee, "the organization of unit

owners shall provide a written statement in reasonable detail of

the actual dollar amounts the first mortgagee would be required

---

[15] Based on the language of G. L. c. 183A, § 6 (c), fourth
par., the organization of unit owners will be unable to recover
<u>all</u> monies due and owing from a unit owner because a first
mortgagee who elects to pay prescribed amounts in order to
prevent a lien enforcement action is not required to pay certain
enumerated fees that have been imposed on the unit owner as a
consequence of the nonpayment of common expenses.

to pay, if it so elected, to cause the organization of unit owners not to take further action to enforce its priority liens against the unit" (emphasis added). The fifth paragraph also sets forth a timetable by which the first mortgagee and the organization of unit owners shall enter into the written agreement described in the fourth paragraph. See id.

By enabling a first mortgagee to assume responsibility for a unit owner's unpaid common expenses, the Legislature has balanced the interests of a condominium association with those of a first mortgagee. On the one hand, the condominium association is assured that it will receive six months' worth of delinquent common expenses plus all future common expenses, thereby allowing it to meet its ongoing financial obligations without imposing an additional burden on unit owners who have paid their common expenses in a timely manner.[16] On the other hand, the first mortgagee is assured that it will maintain its lien priority, and that the condominium association will refrain

---

[16] The amici on behalf of financial institutions that lend money to condominium associations point out that these loans, which are used to maintain and repair the common elements of a condominium, are secured by a pledge of the condominium association's income stream, namely, the common expenses paid by the unit owners. According to these amici, the availability of multiple contemporaneous priority liens for successive six-month periods of time reduces the risk associated with such loans and increases the willingness of financial institutions to make them. The amici state that they currently have approximately $229 million in outstanding loans to about 721 condominium associations in Massachusetts.

from taking further enforcement action. The first mortgagee also can avoid the costs and reasonable attorney's fees that otherwise would be incurred in the lien enforcement action, and can preserve the value of its collateral through the continuous payment of common expenses.[17]

Construing G. L. c. 183A, § 6 (c), as permitting an organization of unit owners to establish a single priority lien on a condominium unit for the recovery of only six months' worth of unpaid common expenses would render the mechanism established by the Legislature in the fourth and fifth paragraphs of the statute inconsequential. It also would ignore the Legislature's

---

[17] In concluding that successive lien enforcement actions would undermine the equitable balance between the interests of a condominium association and those of a first mortgagee, the Appellate Division relied, in part, on § 3-116 of the Uniform Condominium Act (UCA), 7 (Part II) U.L.A. 625 (Master ed. 2009). The UCA was enacted for three primary purposes: "(1) to make terminology and details of condominium statutes uniform so that national lenders could more easily assess the appropriateness of condominium documents and financing, (2) to make unit holders' 'bundle of rights' more uniform so that 'the increasingly mobile consumer' could become more educated 'in this very complex area,' and (3) to solve problems concerning 'termination of condominiums, eminent domain, insurance, and the rights and obligations of lenders upon foreclosure of a condominium project,' which were 'not satisfactorily addressed by any existing statute.'" Plano Parkway Office Condominiums v. Bever Props., LLC, 246 S.W.3d 188, 193-194 (Tex. Ct. App. 2007), quoting Prefatory Note to UCA, supra at 487. Massachusetts has not adopted either the UCA or its successor, the Uniform Common Interest Ownership Act, 7 (Part II) U.L.A. 1 (Master ed. 2009). Moreover, neither includes any provisions akin to those set forth in G. L. c. 183A, § 6 (c), fourth par., establishing a mechanism for the balancing of interests beyond what was afforded by the 1992 amendments to G. L. c. 183A, § 6.

references to "priority lien*s*" in both the fourth and fifth paragraphs of § 6 (c) (emphasis added). There would be little reason for a first mortgagee to assume responsibility for the payment of a unit owner's future common expenses if the condominium association were limited to one six-month period of lien priority. In such circumstances, future common expenses would always be subordinate to the first mortgage. The procedure articulated in the fourth and fifth paragraphs of G. L. c. 183A, § 6 (c), reflects an awareness by the Legislature that the statute permits an organization of unit owners to establish and enforce multiple contemporaneous priority liens on a condominium unit. Our interpretation of G. L. c. 183A, § 6, is consistent with the Legislature's long-standing interest in improving the governance of condominiums and strengthening the ability of organizations of unit owners to collect common expenses, thereby avoiding a reemergence of the serious public emergency that developed in the early 1990s. We are cognizant of the concern that by allowing a condominium association to establish multiple priority liens over an extended period of time, those liens eventually could have priority over much of the first mortgage. However, it is well within the control of a first mortgagee to avert the establishment of such liens in the first instance by paying statutorily prescribed amounts to the

organization of unit owners in conformity with G. L. c. 183A, § 6 (c), fourth par.

4. Appellate attorney's fees. In its brief, the association has requested appellate attorney's fees and costs incurred as a consequence of its efforts to recover the common expenses due and owing from the Brittons. General Laws c. 183A, § 6 (b), states that "[t]he unit owner shall be personally liable for all sums assessed for his share of the common expenses including late charges, fines, penalties, and interest assessed by the organization of unit owners and all costs of collection including attorneys' fees, costs, and charges." The Appellate Division of the District Court awarded the association $8,500 in appellate attorney's fees and costs, which was added to the total judgment entered in its favor.

We now conclude that the association is statutorily entitled to recover reasonable attorney's fees and costs associated with the proceedings before this court and the Appeals Court.[18] See Yorke Mgt. v. Castro, 406 Mass. 17, 19 (1989). The association is directed to file with the clerk of this court materials detailing and supporting its request for

---

[18] With respect to a request for attorney's fees and costs that the association may have incurred as a consequence of filing its own appeal in the Appeals Court and opposing the Brittons' cross appeal, the association may apply to that court for such fees and costs. See Costa v. Fall River Hous. Auth., 453 Mass. 614, 633 n.28 (2009); T & D Video, Inc. v. Revere, 450 Mass. 107, 117 (2007).

such fees and costs within fourteen days of the issuance of the rescript in this case.  See Fabre v. Walton, 441 Mass. 9, 10 (2004).  The Brittons will be afforded fourteen days to respond, and the court will then enter an appropriate order.  See id. at 10-11.

5. Conclusion.  The association may file successive legal actions against the Brittons under G. L. c. 183A, § 6, to establish and enforce multiple contemporaneous liens on their condominium unit, each with a six-month period of priority over the first mortgage, for the recoupment of successive periods of unpaid common expenses.  Accordingly, the judgment of the Appellate Division of the District Court is reversed.

So ordered.